# JUAN UBARRI Y CASALS ET AL.

*v.*

## GEO. S. KECK ET AL.

---

San Juan, Law, No. 1174.

### ON MOTION FOR DIRECTION OF A VERDICT.

Spanish Law—Codes.

1. The Novisima Recopilacion of 1804 did not repeal preceding laws. The Civil Code was adopted in 1889 after a project of 1854 and Bases of 1888. The Porto Rican Code substantially conforms to the Spanish.

Prescription—Spanish Law.

2. Originally there was no difference between the right of property and the right of suit, and no limit within which a suit must be brought. Beginning with the Twelve Tables, limitations came about through the Roman pretor, who gave and withheld the right to sue. The Theodosian Code established the first real statute, one of thirty years. Justinian instituted a distinction between acquisitive and defensive limitations, which has passed into Spanish law.

Limitations—Court Records.

3. After thirty years no court will scrutinize minutely the proceedings of another, on account of change of circumstances.

---

NOTE.—For authorities passing on the question of right of executor or administrator to purchase at his own sale, see note in L.R.A.1918B, 7.

Ubarri y Casals v. Keck.

Representative—Buying at His Own Sale.

 4. The principle goes back of all law that a man cannot take advantage of his trust position to the disadvantage of the person who trusts him. This was equally true at Rome and in Spain, whether it be an executor, guardian, or other representative.

Prescription—Good Faith and Just Title.

 5. Under Spanish law a person is protected against a claim if he is in possession in good faith with a just title, for ten years if present and twenty years if absent from the country.

Good Faith—Just Title.

 6. Good faith is where one is not aware of defects of his own title. Justo titulo is analogous to a paper title at common law, that is, is in regular form, but under the Mortgage Law a deed to be a justo titulo must be recorded.

Minor—Protection of Title.

 7. Under both the Spanish law and the common law one's property cannot be taken away until he comes of age.

Minor—Rule of Repose.

 8. The Porto Rico Civil Code, § 1864, recognizes a rule of repose after thirty years.

Opinion filed February 6, 1919.

---

*Mr. H. R. Francis* for plaintiffs.

*Mr. H. G. Molina* for defendants.

HAMILTON, Judge, delivered the following opinion:

This is a suit in what is ordinarily called ejectment for a house and lot at Rio Piedras. It is brought under the influence at least of quite a celebrated case which went up from this court, ordinarily called the Diaz-Longpré case. I do not give the details, but that case decided that an executor or a guardian—the

### Ubarri y Casals v. Keck.

principle would be the same—cannot buy at his own sale. The expression here is, adjudicate the property to himself in payment of a debt without certain judicial proceedings which are prescribed. They were not followed in that particular case. I believe there is some question as to whether the local courts thought that ratification afterwards amounted to the same as permission beforehand, but, however that may be, the sale was declared invalid. This has, as I understand, opened the doors for a good deal of litigation. That is not material in this court. If it is proper to have litigation, that is what this court is established for; but at the same time the court does not want to be put in the position of encouraging litigation which would not be for the public good and could not be sustained in the long run, so that I approach the decision of this question with a feeling of responsibility. There are private rights to be regarded always. That is what courts are for. And public policy is also to be regarded, because it is the public that provides the court.

This case is as follows. There was originally a larger piece of land, but the size of it makes no difference. For our purposes it is this house and lot. The property seems to have belonged to one Juan Ubarri, and he died, I believe, in 1884, leaving eight children besides a widow. His brother Pablo Ubarri, a well-known man connected with the street railroad enterprise between Rio Piedras and San Juan, was his executor or whatever was the proper title at that time. Some proceeding was had by which the parties, the adults, seem to have come to the conclusion that the debt claimed by Pablo as due by Juan was about equivalent to the main property, and Pablo took it as his own. That was in 1884 or thereabouts. At that

Ubarri y Casals v. Keck.

time there were certainly five of the children of Juan who were minors, that is, minors under twenty-five years of age; for it was in Spanish times and the majority was twenty-five. Their names were Pablo, Angela, Jose Julian, Enrique, and Maria Encarnacion. They certainly were minors. There was another whom there may be some dispute about, but that would be simply a question of quantity, and not of quality. If there was one minor the point raised would be good. The deed taken by Pablo apparently was inscribed at once.

Of course some law governed Spain and her dependencies at that time, some civil law. It was the Novisima Recopilacion of 1804 with a good many additional laws which had been passed under the Napoleonic influences and also under the reaction coming with Fernando VII. How that law read in 1804 may not be certain. Spain had a very queer way, according to American ideas, of passing a law amending a preceding law and then letting the courts or parties find out the exact situation. They did not repeal the old law. They left that in force. So sometimes in studying a Spanish law the court must take into account the Roman law and the Visigoths and the Novisima of Charles IV., besides subsequent acts. It makes a very complicated study and very interesting. But there was some law in force at the time. What it is we will have to get at.

In 1889 came the adoption of the Civil Code. It has been projected long before. In 1854 there was a very serious project, in 1888 Bases for a Code, but in 1889 came the adoption of the Civil Code. The Spanish Code was in articles and the numbers are a little different, but for our purposes we will use the Porto Rican Code. Section 1840 says that prescription which began to run before the publication of this Code

shall be governed by the prior laws, but the second part of the section goes on to say that the length of time shall be controlled by the new law. I think that is substantially the common-law rule. The Statute of Limitations may be changed provided a reasonable length of time still remains after the change. I take it that the rule cannot be very different under § 1840.

Going on with the facts, in 1894 Pablo Ubarri died. This was five years after adoption of the Civil Code. In 1898 his son and heir Pablo Ubarri, Jr., as we will call him to use the American term, sells to the defendants in this case. Two of them have died but their estates have been made defendants.' That was the situation at the time of the American occupation, or rather this was immediately following the American occupation. In 1902 the Civil Code was revised, but I do not think that there was any substantial change so far as concerns us in this case. The American purchasers of 1898 do not seem to have recorded their deed. The reason given was that there was lack of authority as to powers of attorney. Whatever the reason was, the deed was not recorded until after the beginning of this suit in 1918. I think those are substantially the facts of the case. There were deaths of course, but the heirs were made parties to the suit, with the exception, I believe, of two. Now on those facts what is the law?

A motion was made to take the case from the jury at the end of the plaintiffs' case. I did not do that because I wanted all the facts in the record. The motion is renewed in a different form. I presume it is to direct a verdict. We could hardly take it from the jury after the evidence is all in. The reason urged is that the plaintiff has no case upon the facts. The principal point in the case is as to prescription. Prescription has a very

Ubarri y Casals v. Keck.

interesting history which of course we cannot go into except so far as to get at the principle.

When they first began to have suits between mankind or members of society there was no limitation at all. There was no difference thought of as between the right of property and the right of suit, nor was there any limit as to the time within which a suit could be brought. That is something which comes about in a more advanced state of society. It came about under the Romans. In the Twelve Tables on examination I do not find anything definite that has any analogy to prescription or the Statute of Limitations. The first Statute of Limitations came about through the influence of the Roman pretor. The Roman pretor found it proper to introduce a variation of the law which was very analogous to a suit in the chancery court in England many centuries afterwards, and he did it by granting the right to suit in certain cases which were not allowed by the Twelve Tables. He said, I will grant a suit, dabo judicium, within one year, so that these suits which were called actiones judicii grew up under the Roman pretor. So one year became the first Statute of Limitations, as we call it in American practice. That became inadequate, but it took them about five hundred years to find out that it was inadequate. The Emperors Honorius and Theodocius III., who published the Theodosian Code, which was really the code for Europe, extended the terms of the statute, or rather established a real statute. They said that if suits were brought within thirty years, and in some cases within forty years, lands could be recovered, but not after that time. Justinian Code, bk. 7, title 39, Law 3, which expressly applies to minors. To the same effect was the Fuero Juzgo, bk. 10, title 2, Law 3. Much later, in 533 or thereabouts, Justinian or his

advisers extended it in another direction. The Justinian Code has been practically adopted by Spain just exactly as the Theodosian Code was actually. adopted by the Spanish rulers. He took into account a distinction between acquisitive and the defensive limitations, so from that time on we have the two different kinds. The Spanish Civil Code has sanctioned that distinction between the acquisitive and positive, or, as we might call it, prescription. They said that within a certain period with just title and good faith you will get what is a good title. That is acquisitive prescription.

At common law limitations pursued a different course, and it was not really until the time of James I. that there was a statute of limitations, and it did not recognize the distinction between acquisitive prescription and the other. This is not material except that the two great systems found it necessary to use what we call limitations and the civil law calls prescription.

What is the effect upon this case? We have two parts of the law in force in this case. Looking at the proceeding in 1884, it seems to me that I can eliminate all question as to the widow. The widow was of age at that time, and she seems to have assented to the proceedings, and they virtually, perhaps not technically, amount to her recognizing that her interest in the property was eliminated. She either got a quid pro quo or she waived whatever rights she had. That is the way I understand the proposition. After a certain length of time, certainly after thirty odd years, thirty-five years I think, no court is going to scrutinize minutely the proceedings of another court. The records disappear. The records are kept in a different way. The law is looked at from a different point of view, and, whatever else there is in the case, I think that I can declare that one

point established,—this court is not going back of what was done in San Juan in 1884 in regard to the widow. She is not in this case. Whatever rights the parties have, they have independent of the widow.

Considerable reference has been made, and properly, to the case of Longpré v. Diaz, 237 U. S. 512, 59 L. ed. 1080, 35 Sup. Ct. Rep. 731, and to the case of Cordova v. Folgueras y Rijos, 227 U. S. 375, 57 L. ed. 556, 33 Sup. Ct. Rep. 350, both of which I have examined. There are differences between the facts in those cases and the facts in this case. It is very seldom that cases are identically on all fours. But I take it that the principle is the same. It was the rule of Roman law that a guardian could not buy at his own sale. It was not so declared as to executors because the Roman law did not know executors, but the principle goes back of all law that a man cannot take advantage of his trust position to the disadvantage of the person who trusts him, and that has been the rule since the time of any conception of the difference between right and wrong. That was true in Roman law and it was true in Spain. It was expressly declared in the last compilation and in the Novisima Compilacion, bk. 10, that a guardian could not buy at his own sale; so that these modern cases are simply applying the principle to particular state of facts. And I take it that the same is true here, that is to say, that Pablo Ubarri, who was the executor, could not legally take to himself the property that belonged to the estate which he represented, and I regard this case as one that does not depend upon a valid title coming from Pablo Ubarri.

I may say that this suit is for two things. It is for the property and for the fruits of the property. I will consider

Ubarri y Casals v. Keck.

the question of the property. There certainly could not be right to the fruits unless there was a right to that which produced the fruits; so I will limit myself to the right of ownership, that is, the right to the property. Prescriptions are set up here under § 1858 and §§ 1860 and 1864. Taking up the first, § 1858 provides that a person is protected against a claim if he is in possession in good faith and with a just title, justo titulo. In such case as to persons present the limitation is ten years and as to those absent, twenty years. I do not know that it makes a great deal of difference which would be applicable in this case, because if it prevails it would be within twenty years; so it would not make much difference whether the absence applies to the plaintiff or to the defendant. Ordinarily the plaintiff cannot set it up, because the land is here and the courts are here and a plaintiff can come and sue. It is where he cannot get at a defendant, and that would not apply generally as to real property because the real property is always here.

The question then is as to the ten or twenty years' period, whether there was good faith and a just title on the part of these defendants. As to good faith, that is defined or prescribed in §§ 436 and 437. A man is acting in good faith so far as property is concerned when he is not aware of the defects of his title. It is very strenuously argued in this case that a man is construed to know the defects of his title because everything is required to be put of record, and in this particular case the ownership of Pablo Ubarri was put of record; so that the defect in his title ought to be charged up to the defendants. I do not so construe the decision. If that was so there would never be question of good faith or just title at all. It would be just

a question of record. A man would be bound by the record and nothing else. One section throws some light upon this. Section 444 says that a person claiming under a deed of an executor cannot set up his claim until the death of the person under whom he is claiming. As I understand the decisions, it is a question not of record, but a question of actual knowledge or actual notice, not constructive notice; and I do not think it has been shown in this case that the defendants acted in bad faith, —that they took with bad faith.

There is the other question of justo titulo, just title. That is very analogous to what in the common law is called a paper title, a formal deed. The deed to the defendants in this case, so far as appears, seems to be in regular form, and it would seem to be, so far as its form is concerned, a justo titulo. There is, however, the provision in the Mortgage Law, §§ 29 and 34, that a deed to be a justo titulo must be recorded. This deed was not recorded ten or twenty years ago, in fact it was not recorded until just the other day, so to speak. It seems to me this would take away from it its right to be a justo titulo, so that I do not think the defendants could claim under the prescription of § 1858 and the allied sections.

The other question now comes up, then, of thirty years' prescription. That is divided into the two sets of prescription of actions under § 1864 and the prescription of ownership under § 1860. I do not know that for the purpose of this case I need to discriminate between the two. If one could not sue in this particular case it would not make much difference whether he had abstract ownership or not. If we take the date 1884 and the date of the beginning of this suit, 1916, there has been thirty years. The plaintiff, however, contends that the thirty

Ubarri y Casals v. Keck.

years did not begin to run. That under the Third Partida, bk. 29, law 8, a minor, that is to say a minor under twenty-five, is protected until his majority in his rights of property, and the contention is that this Partida was in force in 1884, and that these plaintiffs or some of them, five of them at least, and possibly the sixth, were minors under that provision, and therefore the thirty years could not be construed as running against them. This is an interesting point.

And furthermore as to a suit for the land, that it could not be brought against an unknown owner until the Code of Civil Procedure. That of course does not come up at this particular time. I should have said that executors could not buy at their own sale under the present Civil Code, § 1362. There is no doubt that under § 128 of the Code of Civil Procedure, which governs the practice in this court, the burden as to limitations is upon the party setting up the limitations.

Under all of these principles, what is the proper decision as to the thirty-year claim? It seems to me that the claim as to the prevalence of the Third Partida does not make any difference in this case. That is to say, whether that provision applies or not would be difficult to tell, but if it does apply it simply says that one's property cannot be taken away until he comes of age. That is good law. That is the law under pretty much all systems. There is at common law—and I take it that the same is true under § 1864—a rule of repose. It is under the head of prescription of actions, however, and at common law it is, I think, more satisfactorily known as the rule of repose; but the principle I take it is the same under the civil law, that is to say, there is some time fixed after which suits cannot be brought. Interest rei publicæ ut sit finis litium. There must be some

Ubarri y Casals v. Keck.

end to the enforcement of private rights, and I take it that this thirty-year prescription of 1864 is such a statute of repose, and that it did begin to run from the year 1884; that something was then done which was wrong, and that there must be some period within which that wrong may be righted, and that § 1864 does apply as a statute of repose. That it does not make any difference whether there was a just title and good faith or even minority or anything else.

That being my conclusion, I shall have to grant the motion for direction of a verdict.