**MELON et al. v. ENTIDAD PROVINCIA RELIGIOSA DE PADRES MERCEDARIOS DE CASTILLA.**

**MELON et al. v. CONGREGACION DE LOS RELIGIOSOS DE NUESTRA SENORA DE LA MERCED et al.**

Nos. 4505, 4506.

United States Court of Appeals, First Circuit.

May 16, 1951.

Jose O. Sabater, San Juan, P. R. (Walter L. Newsom, Jr., San Juan, P. R., on brief), for appellants.

Rafael O. Fernandez, San Juan, P. R. (Charles R. Hartzell, San Juan, P. R., on brief), for appellees.

Before MARIS, WOODBURY and HARTIGAN, Circuit Judges.

MARIS, Circuit Judge.

These are appeals by the plaintiffs, Maria de los Angeles Melon and her husband Adolfo Fournier Cuadros, from judgments of the United States District Court for the District of Puerto Rico dismissing their complaints for failure to state causes of action. The complainants seek to have certain deeds under which the defendants hold title to several parcels of real estate in Puerto Rico declared void and to have an accounting of the fruits of the properties. The complaints allege that the execution of the deeds by the former owner Pantaleona Melon Saenz, a resident of Barcelona, Spain, was obtained by fraud, that Pantaleona Melon Saenz by a sacramental will made upon her deathbed in Barcelona and proved after her death in accordance with an ancient law still in force in that city constituted her niece, Maria de los Angeles Melon, one of the plaintiffs, her sole and universal heir, and that Maria as the sole and universal heir of Pantaleona Melon Saenz is the true owner of the Puerto Rican properties in question.

It appears that Pantaleona Melon Saenz, having suffered a cerebral hemorrhage and

being in extremis, on July 7, 1937 declared in the presence of witnesses that it was her will that her niece should be her only and universal heir. Pantaleona Melon Saenz died two days later. In accordance with an ancient law or privilege conferred upon citizens of Barcelona by Pedro II in the year 1283 [1] the nuncupative will of Pantaleona Melon Saenz was proved in the following manner. On July 11, 1939 pursuant to prior notice and by order of the Court of First Instance No. 1 of Barcelona the judge, the secretary of the court, the fiscal, the witnesses and counsel appeared at the Altar of the Holy Cross, formerly San Felix Martyr, in the ancient Church of Saints Justo and Pastor in Barcelona. Six candles and the Holy Gospel having been placed upon the Consecrated Stone, the court was there convened and the parish priest administered the oath to the two witnesses. The witnesses were then separately examined at the altar and each testified that the decedent, having suffered an attack of hemiplegia but being in their opinion in full possession of her mental faculties, stated her will to them as being the designation of her niece Angeles Melon as her only and universal heir. They also stated that two other persons were present, a female friend of the decedent and her female servant. The two women, however, were not competent witnesses under the local law.

Counsel then requested the reduction to a sacramental testament of the will thus testified to and its protocolization before a notary. The fiscal, however, objected upon the ground that the privilege of establishing and protocolizing a sacramental will is given by the law of Pedro II only to persons domiciled in Barcelona and that it had not been established that the decedent was so domiciled. Thereupon proof was furnished that the decedent had been domi-

ciled in Barcelona for more than ten years before her death. The fiscal then withdrew his objection and the Court of First Instance No. 1 of Barcelona directed that the decedent's will as testified to by the witnesses be reduced to a sacramental testament and that the record thereof be protocolized before a notary, which was done. An authenticated copy of its protocolization is in the record before us.

It is upon the sacramental will thus proved and protocolized in Barcelona that the plaintiffs rely as the basis for their title to the Puerto Rican real estate involved in these suits. The action of the district court in dismissing the complaints was based upon its conclusion that the will was ineffective to pass title to Maria to the Puerto Rican real estate in question and that she and her husband accordingly have no standing to prosecute the suits. The question thus raised and which this court is called upon to decide is whether the law of Puerto Rico will recognize as effective to pass title to real estate situated in Puerto Rico a foreign will the formalities and proof of which do not comply with Puerto Rican law.

That the question involved is the one just stated becomes clear when we recall that under Section 650 of the Civil Code of Puerto Rico, 1930 Ed., a nuncupative will made without the assistance of a notary by a testator in imminent danger of death must be made before five competent witnesses,[2] whereas in the present case there were only four witnesses present when Pantaleona Melon Saenz stated her will. Moreover under Sections 534 et seq. of the Code of Civil Procedure of Puerto Rico, 1933 Ed., the procedure for reducing a nuncupative will to a public instrument is prescribed. It is also provided that proceedings for that purpose may be instituted in an insular district court. This procedure

1. Chapter 48 of the Privilege of "Recognoverunt Proceres," Lib. I, title 13, vol. 2 of the Constitution of Catalonia. By decisions of the Supreme Court of Spain of March 18, 1864; June 18, 1864; February 21, 1870; June 26, 1877; June 15, 1878; April 28, 1885; April 10, 1891; October 30, 1901; May 4, 1904; August 31, 1908; November 27, 1909; and March 13, 1912 it has been held that this ancient law is still in force in Barcelona.

2. "Section 650.—If the testator is in imminent danger of death, the will may be executed before five competent witnesses without the necessity of a notary."

was, of course, not followed in the case of the nuncupative will of Pantaleona Melon Saenz which was, as we have seen, proved and protocolized in accordance with the ancient law in force in Barcelona.

In support of the plaintiffs' contention that the will must be recognized under the Puerto Rican law as effective to pass title to the Puerto Rican properties they refer to various sections of the Civil Code of Puerto Rico. The sections of the Code which appear to be involved are set out in a footnote.[3]

The plaintiffs particularly stress the provision contained in Section 11 that the forms and solemnities of wills are governed by the laws of the country in which they are executed. This, they say, establishes for Puerto Rico the conflicts rule that if a will is executed and proved in accordance with the law of the place where it was executed it is to be regarded as valid in Puerto Rico for all purposes, including the disposition of title to Puerto Rican real estate. The defendants on the other hand stress the provision of Section 10 that real property is subject to the laws of the country in which it is situated, as well as the provision of Section 636 that any will shall be void if the formalities prescribed by Chapter 1, Title III, Book III of the Civil Code have not been observed in its execution. The provision of Section 11 that the forms and solemnities of a will are to be governed by the laws of the country in which it is executed and the provisions of Sections 625 and 626 that a will executed in a foreign country is considered special must, the defendants say, be read as relating to Section 666 which specifically authorizes citizens of Puerto Rico to make wills abroad according to the forms established by the laws of the country in which they are sojourning.

The reconciliation of the language of these Code provisions with respect to foreign wills and their proper interpretation presents an interesting problem. But it is a problem the solution of which is peculiarly within the competence of the Supreme Court of Puerto Rico.[4] We accordingly look to the decisions of that court for guidance. Turning to those decisions we find that the Supreme Court has had

---

3. Civil Code of Puerto Rico, 1930 Ed.

"Section 10.—Personal property is subject to the laws of the nation of the owner thereof; real property to the laws of the country in which it is situated.

"Section 11.—The forms and solemnities of contracts, wills and other public instruments are governed by the laws of the country in which they are executed.

"When such acts are authorized by diplomatic or consular officials of the United States abroad, the formalities established for their execution by the laws of the United States shall be observed.

"Notwithstanding the provisions of this and the preceding section, prohibitory laws relating to persons, their acts or property, and those which relate to public order and to good morals shall not be held invalid by reason of laws, decisions, regulations or agreements in force in any foreign country.

\* \* \* \* \* \*

"Section 625.—Wills may be ordinary or special.

"Ordinary wills may be holographic, open, or closed.

"Section 626.—Military and maritime wills and those executed in foreign countries are considered special.

\* \* \* \* \* \*

"Section 636.—Any will, in the execution of which, the formalities, respectively established in this chapter, have not been observed, shall be void.

\* \* \* \* \* \*

"Section 666.—Citizens of Porto Rico may make wills abroad, according to the forms established by the laws of the country in which they are sojourning.

"They may also make wills on the high seas, while on passage in a ship of the United States or foreign country, in accordance with the laws of the State or Nation to which the ship belongs.

"They may also execute holographic wills, under section 637, even in countries the laws of which do not recognize that form of will.

\* \* \* \* \* \*

"Section 674.—Wills shall become void or testamentary provisions without effect, in whole or in part, only in the cases expressly prescribed in this Code."

4. Cordova v. Folgueras, 1913, 227 U.S. 375, 33 S.Ct. 350, 57 L.Ed. 556; De Castro v. Board of Com'rs, 1944, 322 U.S. 451, 64 S.Ct. 1121, 88 L.Ed. 1384.

occasion to consider the precise question of conflict of laws with which we are here confronted. That court has held that under the Civil Code of Puerto Rico, which in this respect departs from the Spanish Civil Code, the rule of *lex rei sitae* has been adopted to determine not only the validity and effect of the provisions of wills purporting to dispose of real estate in Puerto Rico but also the formalities required in the execution of such wills and the capacity of parties to make them. Colón et al. v. Registrar of Aquadilla, 1915, 22 P.R.R. 344; Bracons v. Registrar of San Juan, 1917, 24 P.R.R. 703; Pastor-Gomila v. Miró-Pastor, 1925, 34 P.R.R. 50.

In the Colón case, the first of the cases just cited, the Supreme Court reviewed the Spanish Civil Code, the report of the Puerto Rican Insular Code Commission of 1902 and the experience of the Louisiana courts with respect to the solution of this problem. The court definitely decided that the American rule of *lex rei sitae* is the proper test to be applied under the law of Puerto Rico to determine the legal capacity of parties to real estate transactions. The court stated, 22 P.R.R. at page 351 that this rule "does no violence either to the letter or the spirit of our Civil Code or to any fundamental principle underlying the same." The rule of *lex rei sitae* was specifically applied by the Supreme Court to a Spanish will in the Pastor-Gomila case. In that case the court, following the rule laid down in the Colón case, held that a holographic will of a Spanish subject which had been allowed by a Spanish court and protocolized by a Spanish notary could not be given the effect of vesting title in the devisee named therein to real estate situated in Puerto Rico. There was some question in that case as to whether the testator, who had lived for many years in Puerto Rico but died in Spain, was domiciled in the latter country at the time of his death. The court, however, stated, 34 P.R.R. at pages 56–57: "But even supposing that he went to Spain to reside there permanently during the balance of his life and that for this reason his last domicile was in Spain, still the decision of the Court of First Instance of Palma declaring the said letters

to be the holographic will of Amador Pastor y Pastor and ordering that they be protocoled in a notorial office in that city can produce no effect in this Island where the real property is situated, because, as held by this court in the case of Colón v. Registrar, 22 P.R.R. 344, the adoption and application of the rule of *lex rei sitae* as held by the American courts to include and govern the capacity of the parties does no violence either to the letter or to the spirit of our Civil Code or to any of its fundamental principles and establishes once for all a single, fixed and rational rule conducive to the avoidance of inconsistencies and confusion in our decisions referring to real and personal statutes and the effect of foreign laws; and applying the said doctrine in that case we held that a Spanish tutor of minors residing in Spain, authorized by the family council, as required by the Spanish Civil Code, to execute the cancellation of a mortgage upon real estate situated in Porto Rico, needed for that purpose authorization of the district court within whose jurisdiction the property was situated."

The American rule of *lex rei sitae* as it applies to the question with which we are here confronted is stated in Section 249 of the Restatement of the Law of Conflict of Laws, as follows: "The validity and effect of a will of an interest in land are determined by the law of the state where the land is."

Comment a to Section 249 of the Restatement states: "The law of the state where the land is determines the capacity of a person to make a will or to accept a devise, the form of the will, the validity of a particular provision in the will, and the nature of the estate created."

Under this rule the validity of the will of Pantaleona Melon Saenz, insofar as it purports to pass an interest in her Puerto Rican real estate, is to be determined by the law of Puerto Rico. As we have seen, the will fails to meet the requirements of that law since although it clearly was an open nuncupative will of the kind contemplated by Section 650 of the Civil Code it was not made in the presence

of five witnesses as that section requires. The requirements of that section, which were obviously intended to discourage fraud, must be strictly complied with. Oller v. Solá, et al., 1920, 28 P.R.R. 280. The will of Pantaleona Melon Saenz which did not comply with it cannot, therefore, be recognized as valid to pass title to the plaintiff Maria de los Angeles Melon to the Puerto Rican real estate involved in these suits. We need, therefore, not decide whether the will is also ineffective because it has not been proved and protocolized in Puerto Rico. This would present a more difficult problem although there is some indication that in this respect also the American rule of *lex rei sitae* is in force in Puerto Rico. See the statement of the Supreme Court, above quoted, in Pastor-Gomila v. Miró-Pastor, supra. But see the contrary suggestion in the later case of Vilella v. Registrar, 1927, 36 P.R.R. 714, 721.

The judgments of the district court will be affirmed.