Vicenta García Aldonza, Plaintiff, Counter-defendant and Appellee, *v.* Monserrate de Jesús, Defendant, Counter-claimant and Appellant.

No. 11338.   Argued March 5, 1956.—Decided April 24, 1956.

*José Sabater* for appellant.   *M. Figueroa del Rosario* for appellee.

Mr. Justice Pérez Pimentel delivered the opinion of the Court.

This is an appeal from a judgment of the Mayagüez Part of the Superior Court sustaining a complaint of revendica-

tion of a certain property consisting of 5 cuerdas of land, situated in the ward of Guanajibo, Hormigueros, brought by Vicenta García Aldonza against Monserrate de Jesús. The complaint alleged that plaintiff is the owner of the said property; that the latter is recorded in her favor in the Registry of Property of Mayagüez; and that the defendant held the possession without any title whatsoever, in bad faith, and against plaintiff's will. In her answer, the defendant admitted that she held the possession and enjoyed the property in litigation since 1935, in the belief that she was the owner, in good faith, publicly, and uninterruptedly; that the property in question was acquired in 1935 by Vicente Pérez Almanza, a Catholic priest, by purchase from Félix Miguel Rodríguez through a public deed; that the priest purchased the property in question for the defendant in payment of the gratuitous services which she rendered to him for many years as a maid and housekeeper. The defendant also filed a counterclaim claiming to be the owner of the property; that she possessed the same in that capacity since 1935; that she paid the property taxes thereon; that in 1942 the Treasurer of Puerto Rico exempted the property in question from taxes as the homestead of the defendant and counter-claimant; that the property was recorded in the Registry of Property in the name of plaintiff and counter-defendant by virtue of a will executed on September 13, 1948, before a notary in Bañeza, Spain, by Rev. Vicente Pérez Almanza, constituting plaintiff his sole and universal heir for having been his maid and taken care of him; that that will, without further requirements, is not sufficient to pass title to real estate situated in Puerto Rico.

The property in question, we have already said, was recorded in the Registry in the name of plaintiff-appellee as hereditary property. At the trial plaintiff offered in evidence, and the court admitted over defendant's objection, a certified copy of the open will executed in Bañeza, Spain, by

Rev. Pérez Almanza, who was the former record owner of the property in litigation. In rendering judgment, the judge of the lower court held that the will in question was executed with all the formalities required by the Puerto Rican law, and that by virtue of such will plaintiff acquired valid title to the property in litigation.

▮ Appellant maintains in the first assignment of error that according to the judgment rendered by the Circuit Court of Boston in *Melón* v. *Entidad Provincia Religiosa*, 189 F. 2d 163, "a foreign will cannot be recognized as valid to pass title to real estate situated in the Island of Puerto Rico."

We disagree. Assuming, without deciding, that the *Melón* case states correctly the rule prevailing in Puerto Rico,[1] there is nothing in that case to support appellant's view. That case dealt with a sacramental will executed in Barcelona, Spain. The formalities and proof of that will did not comply with the requirements of the Puerto Rican laws. The problem before the court was whether that will was effective in Puerto Rico as respects real estate situated in the Island. In this connection, it stated: "The question thus raised and which this court is called upon to decide is whether the law of Puerto Rico will recognize as effective to pass title to real estate situated in Puerto Rico a foreign will the formalities and proof of which do not comply with Puerto Rican law." (189 F. 2d 163.) That court held that under the American, rule of *lex rei sitæ*, which in its opinion was applied by the Supreme Court of Puerto Rico in *Colón et al.* v. *Registrar of Aguadilla*, 22 P.R.R. 344; *Bracons* v. *Registrar of San Juan*, 24 P.R.R. 703; and *Pastor-Gomila* v. *Miró-Pastor*, 34 P.R.R. 50, the validity of the will executed

---

[1] See *Vilella* v. *Registrar of Mayagüez*, 36 P.R.R. 714; *Colón* v. *Registrar*, 67 P.R.R. 16; II Bustamante, *Derecho Internacional Privado*, p. 139 *et seq.*; Rabel, *The Form of Wills*, 6 Vand. L. Rev. 533; 1 Am. J. of Comp. Law, pp. 123–24; Nussbaum, *Principles of Private International Law* (1943), pp. 148–53.

by Pantaleona Melón Sáenz, which was the testatrix' name in that case, insofar as it purported to pass an interest in real estate situated in the Island, was to be determined by the law of Puerto Rico and that, since that will was a nuncupative will of the kind contemplated by § 650 of the Civil Code (will made in imminent danger of death), it was not made in the presence of five witnesses as required by that section, and, therefore, it could not be recognized as valid to pass title to the real estate situated in Puerto Rico.

In *Pastor* v. *Miró, supra,* we held that the decree of the Spanish court holding certain letters of a person who died in Spain to be his holographic will can produce no effect in Puerto Rico as respects real property situated here. One of the grounds of this decision was that the holographic will in question should have been protocolized in this Island, pursuant to the procedure established in our Civil Code, in order to be effective as to real property situated in Puerto Rico.

The Circuit Court of Boston in the *Melón* case did not decide, nor have we, as appears to be the appellant's theory, that a foreign will which complies with all the requisites and formalities of the Puerto Rican law is insufficient at law to pass title to real estate situated in this Island. However, the open will executed before a notary in Spain by Rev. Pérez Almanza, the appellee's predecessor in interest, complies with the requirements and formalities of both the Puerto Rican law and the law of the country where it was executed, and it is therefore sufficient at law to pass title of the property in litigation. The first error assigned was not committed.

■■ In the second assignment appellant maintains that the lower court "erred in finding, as finding of fact No. 3, that Rev. Pérez Almanza acquired the property in order to convey it to Monserrate de Jesús in payment for the gratuitous services which she rendered to him for a number of years as a maid; and in holding, contrarily to the fact, that since the priest did not convey the property to the defend-

ant, the latter never acquired title." Her contention is that since the trial judge found that the priest purchased the property in order to give it to the defendant in payment for her services, he should have concluded, as a matter of law, that defendant was the owner of the property. The difficulty with this contention lies in that the trial judge did not find what appellant alleges. What the judge said in finding of fact No. 3 was that, "upon acquiring the said property, Rev. Pérez Almanza stated to the vendor and to other persons that he was acquiring the property in order to convey it in the future to the defendant in payment for the gratuitous services which she had rendered to him as a maid for a number of years." In the remaining findings of fact the judge found that Rev. Pérez Almanza never conveyed the property to the defendant, and that, on the contrary, as soon as he acquired the property he took possession thereof and proceeded to erect a shed and to arrange other installations, to buy some cattle for the property and to cultivate the land; and that the following year Rev. Pérez Almanza left for Spain, leaving the defendant in charge of the property on condition that she pay the taxes. The lower court therefore concluded that Rev. Pérez Almanza had made the statements mentioned in finding No. 3, but did not find the fact that he had purchased the property in order to convey it to appellant.

In any event, and construing the evidence in the manner most favorable to appellant, the same tended to show, at the most, that Rev. Pérez Almanza made her a promise of sale.

According to the well-established doctrine of the Supreme Court of Spain, construing § 1451 of the Spanish Civil Code, which is equivalent to our § 1340 (1930 ed.), the promise to buy and sell and the contract of sale are not identical and their consequences and juridical effects can not therefore be the same. The promise to buy and sell has been

deemed as a preparatory contract or precontract, the purpose of which is the future execution of a contract of sale and the effects of which cannot correspond squarely to those of the actual and absolute sale.[2] Thus, in the Judgment of November 14, 1927, that Court sees in such promise a contractual modality preliminary to a purchase and sale involving a future event. That of December 6, 1904 declares that one who promises to sell does not convey the property and that there exists only a personal action to demand the fulfilment of the promise. That of February 4, 1911 is to the same effect. That of July 10, 1946 established that in the reciprocal promise to sell, the parties do not sell and purchase but bind themselves to sell and purchase, that is, to give an ultimate consent. Consequently, the alleged promise to sell did not vest appellant with dominion title to the property in litigation.

■■ The last error assigned by appellant is the following:

"The lower court erred in declaring that the defendant did not possess the property during 17 years as owner; and that if it had been as owner, it would have been necessary for her to have held it for 30 years in order to acquire title thereto; and it further erred in declaring that since the previous owner had gone away, it was necessary for the defendant to hold possession for 20 years in order to consolidate her right."

The trial court found that the defendant has not possessed the property in the belief that she was the owner but by mere tolerance or by commission of its former owner, Rev. Pérez Almanza. There is sufficient evidence in the record to support this finding. The priest took material possession of the property when he bought it in 1935. When he left for Spain in 1935 for the purpose of recovering his impaired health, he left the defendant in charge of the property to

---

[2] Judgments of November 11, 1943; March 28, 1944; March 16, 1945; January 18, 1947.

enjoy it gratuitously, on condition that she pay the taxes and refuse to admit any person therein. While in Spain he commissioned his brother Jacinto Pérez Almanza to take steps, through Lic. López de Victoria, to record the property in the Registry, and to that end a dominion-title proceeding was instituted and the property was recorded in the Registry in 1938. We cannot agree with appellant that the findings of the lower court are clearly erroneous, or that the trial judge erred in weighing the evidence.

Having established that defendant-appellant did not acquire dominion title to the property, the fact that she held the possession as agent during 17 years does not vest her with the right to acquire it by prescription. *Sauri* v. *Echevarría*, 51 P.R.R. 71; *Larracuenta* v. *Fabián*, 56 P.R.R. 743; *Roble* v. *Pellot*, 44 P.R.R. 46; *Rivera et al.* v. *Juncos Central Co.*, 31 P.R.R. 252; *Estate of Lampón* v. *Estate of Rivera*, 16 P.R.R. 321.

For the reasons stated, the judgment will be affirmed.