## CORDOVA *v.* FOLGUERAS Y RIJOS.

## DUMEY *v.* HERNANDEZ Y BELLO.

### APPEAL FROM THE SUPREME COURT OF PORTO RICO.

### APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR PORTO RICO.

**Nos. 141, 160.   Argued January 23, 1913.—Decided February 24, 1913.**

During the lifetime of the ancestor no heir has a vested right to inherit from him; and heirs only have such rights of inheritance as are given to them by the laws in force at their ancestor's death.

It is not an interference with vested rights to prescribe the mode of procedure, or the time within which to enforce them, provided reasonable time be given therefor.

Under the laws of Porto Rico, while Law Eleven of Toro as to effect of acts of recognition of rights of natural children may be in force, the provisions of §§ 133 and 137 of the Code of 1902 must be complied with in order to enforce such rights; and this applies to persons whose alleged parent died prior to the enactment of the Code.

Decisions of the courts of Spain rendered after 1898, construing Spanish law applicable to possessions ceded to the United States, although entitled to great consideration, do not preclude the local court from reaching an independent judgment.

16 Porto Rico, 593, affirmed.

5 Porto Rico Fed. Rep. 191, affirmed.

THE facts, which involve the construction of the law of Porto Rico in regard to actions for acknowledgment of natural children, are stated in the opinion.

*Mr. N. B. K. Pettingill* for appellants.

No appearance for appellees.

MR. JUSTICE HOLMES delivered the opinion of the court.

The first of these suits was brought by the appellant, in 1908, it would seem, to have herself declared a natural daughter and entitled to a share of the estate of Don Santiago Rijos Correa, who died on April 29, 1869. The appellees demurred to the complaint on the grounds adverted to in *Burnet* v. *Desmornes*, 226 U. S. 145. By the Civil Code of 1889, Art. 137, actions for the acknowledgment of natural children can be instituted only during the life of the presumed parents, or if the parent dies during the minority of the child within the first four years of its majority. If the appellant was not of age at the death of Correa, she reached majority at the latest in 1893, and the action was barred in 1897. (Under the Code of 1902, § 199, the action is allowed only for two years after coming of age.) The Supreme Court sustained the demurrer and dismissed the complaint.

The second suit, begun in June, 1909, had a similar object. The appellant alleged that she was born on August 4, 1875, and was a natural child of Damian Morell; that he left her mother and married in 1880; in 1889 removed to Mallorca, and died on December 29, 1899. On demurrer the bill was dismissed by the District Court, following the authority of the foregoing decision of the Supreme Court. (We may assume that as the plaintiff retained her domicil in Porto Rico and as a considerable part of the estate consisted of land in the same place, the possible bearing on the case of the removal of Morell to Spain need not be considered.)

The appellants say that at the time of their birth the

law in force was Law Eleven of Toro (Law 1, Title 5, Book 10, Novisima Recopilacion); that under that law they acquired the status and rights of natural children by the facts alleged in their complaints, without the need of acknowledgment by public document or judicial approval as required in the Civil Code of 1889, Art. 133, and so that they were entitled to sue for their share of the inheritance at once.

So far as the second case goes, perhaps it would be a sufficient answer to say that during the lifetime of an ancestor no heir has a vested right to inherit from him; that the Civil Code of 1889 confines the right of natural children to inherit to those children that are acknowledged, § 134, that is, presumably, to those that are acknowledged as it provides; and since heirs have only such rights of inheritance as are given to them by the laws in force at their ancestor's death, that there is no reason why the appellant should take greater ones because she had been informally acknowledged before 1889.

But in the first case the alleged parent died before the Civil Code was enacted, and so it would seem that the plaintiff had ground for claiming rights by inheritance vested before that date. But this claim was met by the Supreme Court by a reference to the statement of motives for the Civil Code which reads that if it was proper to give effect to rights acquired under prior legislation, no consideration of justice required that the subsequent exercise of them 'as well as their duration and the proceedings for enforcing them should be exempted from the provisions of the Code;' and by the interpretation of the fourth Transitory Provision (following Art. 1976). This reads in the official translation, "Actions and rights arising before this Code became operative, and not exercised, shall continue with the extension and according to the terms recognized by prior legislation, but shall be subject, with regard to the exercise, duration, and proceedings

for enforcing them, to the provisions of this Code." The court interpreted these words as meaning that, in order to enforce the rights of a natural child when there was not a solemn recognition, but only acts tending to establish paternity under the Laws of Toro, an action of filiation must be brought as required by Articles 133 and 137 of the Code.

In other words, while, under the Laws of Toro, the acts of recognition alleged, although not amounting to a solemn recognition, may have entitled a natural child to sue for her share of the inheritance and to prove the acts in the same suit, the Code requires a preliminary proceeding to prove those acts and to declare their effect, and limits the time within which such proceeding can be brought. This hardly can be called an interference with vested rights, when a reasonable time for bringing the preliminary proceeding is allowed. In the present case it does not appear that the plaintiff had not reasonable time for an action after the Code went into effect.

It is objected that the Supreme Court of Spain has construed the fourth Transitory Provision otherwise, as has been recognized by the Supreme Court of Porto Rico, *Gual* v. *Bonafoux*, 15 Porto Rico, 545, 555, referring to a judgment of April 11, 1906, but citing as contradictory one of December 19, 1902, that it deemed correct. The Spanish decisions, however, have not the same effect as do those construing a statute subsequently copied by another State. They were rendered after Porto Rico had ceased to be subject to Spanish jurisdiction, and although entitled to great consideration, which no doubt they received, they do not preclude the local court from exercising an independent judgment. The construction adopted in Porto Rico at least does no violence to the words of the statute; it concerns local affairs under a system with which the court of the Island is called on constantly to deal, and we are not prepared, as against the weight prop-

. erly attributed to the local decision, to say that it is wrong. *Gray* v. *Taylor, ante,* p. 51. How the first case should have been dealt with if it had appeared in the record that the plaintiff came of age before the Code went into effect we are not called upon to consider. The construction adopted might give trouble unless a right to bring an action of filiation within a reasonable time were implied. But we have to remember that the law-making power of Spain was not restricted in the way familiar to us.

141. *Judgment affirmed.*
160. *Decree affirmed.*