UNIVERSITY OF CHICAGO v. DATER.

1. HUSBAND AND WIFE—WIFE'S SEPARATE ESTATE.
    Note executed in this State by married woman which bore no relation to her separate estate, without more, carries no personal liability when sued upon in this jurisdiction.

2. Conflict of Laws—Capacity of Married Woman to Contract.
   While generally the validity, nature, obligation and interpretation of a contract is to be governed by the law of the place of performance, such rule does not govern the question of the capacity of a married woman to contract.

3. Husband and Wife—Bills and Notes—Capacity of Married Woman to Contract.
   In action by payee of note secured by mortgage on Illinois property owned by widow's late husband and another, liability of defendant widow who had signed the note and delivered same to mortgagee's agent in this State *held*, determined by the law of this State whether because the contract was made here or in Illinois, as claimed by payee, since by the law of Illinois the capacity of a married woman to contract is governed in such case by the law of Michigan.

Butzel, Bushnell and Sharpe, JJ., dissenting.

Appeal from Berrien; White (Charles E.), J. Submitted June 5, 1936. (Docket No. 89, Calendar No. 38,860.) Decided December 8, 1936. Rehearing applied for.

Assumpsit by the University of Chicago, a corporation, against George R. Dater and Clara A. Price for sums due upon promissory notes. Judgment for plaintiff against defendant Dater but not against defendant Price. Plaintiff appeals. Affirmed.

*Webster Sterling (W. M. Cunningham* and *L. Dow Nichol, Jr.,* of counsel), for plaintiff.

*Gore, Harvey & Fisher,* for defendant.

Wiest, J. I cannot concur in the opinion of Mr. Justice Sharpe.

The obligation in suit was executed in this State by defendant Clara A. Price, a married woman, and bore no relation to her separate estate and, without more, carried no personal liability when sued upon

in this jurisdiction. But, it is claimed, that the obligation was accepted in the State of Illinois, and was there payable and, by the law of that State, Mrs. Price is not saved from liability by reason of want of capacity under the Michigan law of coverture.

As pointed out later in this opinion personal liability of Mrs. Price could not be enforced in Illinois under the theory of an Illinois contract.

In the case at bar negotiations for the loan, to be secured by mortgage, had reached the stage where the lender prepared the note and mortgage in Illinois and sent the same to an agent in Michigan, with direction as to execution by defendants in this State and, when executed, to be returned by such agent to the mortgagee in Illinois. Mrs. Price, at the request of the agent, executed the instruments and the agent mailed the same to the mortgagee.

The instant case does not involve conflict of laws relative to the construction, force and effect of the instruments, signed or executed in one State to be performed in another, but that of capacity of Mrs. Price to enter into such an obligation in this State.

It is well said in a note, 26 L. R. A. (N. S.) 773:

"While there are almost numberless cases which state, with slight variations, Story's general proposition that, where the contract is either expressly or tacitly to be performed in some place other than that where it is made, the general rule is, in conformity to the presumed intention of the parties, that the contract, as to its validity, nature, obligation, and interpretation, is to be governed by the law of the place of performance, none of them can be regarded as express authority for the application of that rule to the question of the capacity of a married woman to contract. Few of them can be relied upon for the application of that rule to any question relating to the existence of a contract as

distinguished from its interpretation or obligation or essential validity.''

It must be agreed that this case is governed by the law of Michigan or of Illinois. If by the law of Michigan, it is clear, and is not disputed, that defendant has no personal liability on the note, recoverable from her separate estate.

Assuming, however, that by the Michigan law of the forum the case is governed by the law of Illinois, it presents the unique situation in the realm of conflict of laws that by the law of Illinois, *Burr* v. *Beckler,* 264 Ill. 230 (106 N. E. 206, L. R. A. 1916 A, 1049, Ann. Cas. 1915 D, 1132), the case is governed by the law of Michigan.

In *Burr* v. *Beckler,* the wife, a resident of Illinois, was sojourning temporarily in Florida. Her husband owed a concern in Illinois, of which he was treasurer, on an overdraft. He informed his wife that he could borrow the necessary money to pay the overdraft from an estate of which he was trustee. The wife executed a note and trust deed in Florida and mailed them to her husband, as trustee, at Chicago, Illinois, as he had directed her to do. The husband also signed the trust deed but the opinion does not state when. The court held that delivery of the note and trust deed by the wife was complete in Florida, the law of that State governed her capacity to contract and, because she was not competent to enter into a contract under the law of Florida, her note and trust deed were void.

The question is not whether the decision is in harmony with the law of Michigan but whether it governs this case. Here, manual delivery was as complete as in the *Burr Case* because it was made to a bank which had been designated by the mortgagee for that purpose.

In neither case had there been a binding engagement by the mortgagee to make the loan prior to the delivery. In neither case had the money been paid in advance of the delivery or contemporaneously therewith. There is nothing in the *Burr Case* to indicate that the mortgagee could not have refused to make the loan or that the mortgagors could not have refused to take the money or could not have abandoned the matter after the wife deposited the papers in the mail. The *Burr* opinion indicates no circumstance fixing the effect of the manual delivery which is not present here. The *Burr Case* is directly applicable and, consequently, under the law of Illinois it must be held that the capacity of defendant Clara A. Price is governed by the law of Michigan. Under the law of Michigan, a married woman cannot bind her separate estate through personal engagement for the benefit of others. Defendant Price is not liable.

Affirmed, with costs to defendant Price.

North, C. J., and Fead and Toy, JJ., concurred with Wiest, J.

Sharpe, J. (*dissenting*). In November, 1928, negotiations were commenced to secure a loan in the sum of $75,000 on a piece of property in Chicago. The property was owned by George R. Dater and John R. Price of Benton Harbor, Michigan, and they appointed H. S. Gray, an attorney of Benton Harbor, as their agent in the matter. Plaintiff agreed to make the loan if it could be assured that the title was good. A trust deed and certain promissory notes were drawn up with George R. Dater and Nellie E. Dater, his wife, and John R. Price and Clara A. Price, his wife, as parties of the first part and the Chicago Title & Trust Company, as trustee

and as party of the second part. The notes were payable in the city of Chicago and at such place as the legal holder might appoint. The trust mortgage and notes were sent by mail to the Benton Harbor State Bank for the signature of the parties involved. The papers were signed in Benton Harbor, Michigan, about December 8, 1928, and mailed to plaintiff's agent in the city of Chicago where the trust deed was placed on record, then it was found that there were some objections to certain delinquent taxes of 1927. Further negotiations followed and finally on January 3, 1929, and after the tax objections were cleared in the title, the loan was actually made and the money paid over by check made payable to Mr. and Mrs. Dater and Mr. and Mrs. Price and cashed in Chicago, Illinois.

January 29, 1929, John R. Price died and it is conceded that Mrs. Price became the actual and record owner of at least one-half of the property after the death of her husband. Subsequent to December 1, 1933, foreclosure proceedings were commenced on the property and the property purchased at chancery sale. Suit was filed in Michigan before the foreclosure suit was completed in Chicago. The cause was heard November 7, 1934, and on June 18, 1935, judgment was rendered in favor of plaintiff against George R. Dater in the amount of $15,536.32 and from which no appeal has been taken. On the same date judgment was entered in favor of Clara Price of no cause for action, from which judgment plaintiff appeals.

It is conceded that under the law of Illinois a married woman is as free to contract as a man, while in Michigan a married woman has not the legal capacity to bind herself or her separate estate by signing these notes. 3 Comp. Laws 1929, § 13057.

The plaintiff contends that the contract was an Illinois contract; that the signing of the notes in Michigan was not the final act in the making of the contract, but rather a preliminary step, the delivery of the note being conditional upon defendant's producing a satisfactory title, the approval of the title in Illinois was the last act necessary to make a legal delivery.

The general rule is well stated in *John A. Tolman Co. v. Reed,* 115 Mich. 71, where the court said:

"The law is well settled that contracts must be construed and their validity determined by the law of the country where they were made, unless the contracting parties clearly appear to have had some other law in view."

"The general rule is that the law of the place where the instrument was executed and delivered so as to become binding as a contract * * * governs the rights and liabilities of the parties thereto, except in so far as they are controlled by the law of the place where the instrument is payable." 8 C. J. p. 87, § 145.

"There is good authority for the broad proposition, however, that when a note is executed by a married woman in the State of her domicile but made payable in another State, if under the law of the former State she could not have entered into the contract but could have done so under the law of the latter State, it will be presumed that it was the intention of the parties that the note should be governed by the law of the latter State and being valid under such law should be enforced against her even in the State of her domicile." 13 R. C. L. p. 1247.

"It is a general rule that every contract as to its validity, nature, interpretation and effect, or, as they may be called, the right, in contradistinction to the remedy, is governed by the law of the place where it is made, unless it is to be performed in another

place, and then it is governed by the law of the place where it is to be performed." *Poole* v. *Perkins,* 126 Va. 331 (101 S. E. 240, 18 A. L. R. 1509).

The next question that presents itself in the case at bar is the place where the contract was made.

"A contract is deemed to have been made in the State where the last act necessary to make it a binding agreement takes place." Goodrich, Conflict of Laws (1st Ed.), p. 218.

"When the contract is made in one jurisdiction to be performed in another the case presents a more complicated question, the rule being that if the parties to a contract are in different jurisdictions, the place where the last act is done which is necessary to the validity of the contract is the place where the contract is entered into." 5 R. C. L. p. 935.

In the case at bar all of the negotiations for the loan occurred in Chicago, the property upon which the mortgage was placed was located in Chicago, and no money was to be paid by plaintiff until such time as the defendants could show good title to the property. We think the mailing of the papers to Chicago was for the purpose of enabling the plaintiff to ascertain if the title to the real estate was satisfactory and was but a preliminary step in the whole transaction. The final act in the making of the loan was the payment of the money in Chicago. This concluded the negotiations and made it an Illinois contract.

The judgment of the trial court should be reversed and the cause remanded to enter a judgment in favor of plaintiff for $15,536.32 with interest from June 18, 1935. Plaintiff should recover costs.

BUSHNELL, J., concurred with SHARPE, J.

BUTZEL, J. (*dissenting*). I concur in the result reached by Justice SHARPE. The place of contracting

controls the question of the capacity of the parties to contract. *Palmer National Bank v. Van Doren,* 260 Mich. 310; American Law Institute Restatement of the Conflict of Laws, § 333. The notes were dated and payable at Chicago and secured by Chicago real estate. The loan was made in Chicago 25 days after the notes had been signed and not until an actual cloud on the title to the realty had been removed. These circumstances leave no doubt that the notes in question constituted Illinois contracts. See *Palmer v. Hill,* 140 Mich. 468; *State of Ohio, ex rel. Fulton, v. Artie Purse,* 273 Mich. 507. The facts are entirely different from those in *Re Estate of Lucas,* 272 Mich. 1, in which the loan was solicited by residents of Michigan, the moneys were first received in Michigan by the borrowers and subsequently the note was dated and signed in Michigan and was payable in Michigan. The place of contracting is where the note is first delivered for value. In 2 Beale on Conflict of Laws (1st Ed.), p. 1047, it is said:

"Delivery, however, is not the only requisite to the creation of a contract on a negotiable instrument. Value must be given, and until, therefore, there has been a delivery for value, the instrument cannot be said to have had any inception. * * *

"It follows that the place of contracting of a contract on a negotiable instrument, be it the obligation of the maker, the drawer, or the indorser, is the place where, after the signature of the party in question, the instrument is first delivered for value."

It is true that the physical act of signing the note in the instant case took place in Michigan and the notes were mailed to plaintiff in Chicago, but there was no absolute delivery until the plaintiff had satisfied itself of the status of the title to the mortgaged

property and until an actual cloud had been removed. Until that time the transaction was conditional and the notes of no binding force and effect.

The rule is stated in 2 Beale on Conflict of Laws (1st Ed.), p. 1045, as follows:

"The phrase 'place of contracting' and its equivalents, the place of making or the place where the contract is made, properly mean the place in which the final act was done which made the promise or promises binding."

A somewhat similar case arose in *Palmer* v. *Hill, supra,* where it was held, as stated in the syllabus to the opinion:

"Where a note and mortgage executed in California in favor of a Michigan bank, on Michigan real estate, is sent to the mortgagee in Michigan, where it is accepted and the consideration paid, the contract is a Michigan contract."

We do not believe that the case of *Burr* v. *Beckler,* 264 Ill. 230 (106 N. E. 206, L. R. A. 1916 A, 1049, Ann. Cas. 1915 D, 1132), should in any way be controlling on this court in determining the *lex loci contractus.* The problem in the instant case is termed by the authorities as one of "qualifications." The prevailing view in answer to the problem is that the law of the forum should control on the question of *lex loci contractus.* An excellent treatment of the entire subject may be found in an article entitled, "The Theory of Qualifications and the Conflict of Laws," by Professor Lorenzen in 20 Columbia Law Review, p. 247.

Were we not to be controlled by our own law and obliged each time to ascertain what a foreign State would have held under similar circumstances, our decisions would be in hopeless confusion and it

would be necessary each time to examine the decisions of other States in determining the *lex loci contractus*. The question, however, is foreclosed in this State as we held in the case of *State of Ohio, ex rel. Fulton,* v. *Artie Purse, supra,* that the law of the place of contracting is to be determined in accordance with the law of the forum.

The judgment should be reversed, with costs to plaintiff.

BUSHNELL, J., concurred with BUTZEL, J.

POTTER, J., did not sit.