**STRAUB et al. v. COE, Com'r of Patents.**

No. 8267.

United States Court of Appeals for the District of Columbia.

Decided June 30, 1943.

Mr. P. E. Henninger, of Washington, D. C., for appellants.

Mr. Clarence W. Moore, of Washington, D. C., with whom Mr. W. W. Cochran, Solicitor, United States Patent Office, of Washington, D. C., appeared on the brief, for appellee.

Before SOPER, Circuit Judge, sitting by designation, and MILLER and EDGERTON, Associate Justices.

MILLER, Associate Justice.

This is an appeal from a judgment of the District Court, dismissing appellants' complaint in a proceeding under R.S. § 4915[1] for the issuance of a patent. The complaint alleged that appellant, Straub, is the inventor of "a certain food product adapted to stimulate calcium metabolism in the body to insure proper bone formation and growth." The invention claimed is, however, not for a process. Each of the claims specifies a food product comprising or containing honey and vitamin D. They are very broad; sufficiently so, indeed, to include any food product which contains the two ingredients.

The District Court made findings, among others, as follows "[11] Plaintiffs have not established that honey and vitamin D coact or cooperate in any unusual or unexpected manner, and particularly have not proved that the result obtained from feeding a mixture of vitamin D and honey are more than the additive effect obtainable by feeding honey and vitamin D separately. [12] It was not invention to add vitamin D to honey or to a food product containing honey, and it particularly was not invention to add a vitamin D concentrate to honey or to a food product containing honey, whether it be a vitamin D concentrate in the form of an alcoholic extract, or an oil concentrate of vitamin D emulsified in the honey, or finely divided crystals of vitamin D dispersed in the honey. [13] If the mixture of vitamin D and honey disclosed by the patent to Bresnick, No. 2,007,108, or the mixture of honey and butter containing vitamin D disclosed in the patent to Rasky, No. 1,892,902, when used as a food would have an effect upon calcium retention in the human body, the discovery of that fact would not be an invention." The Court concluded that the claims were not patentable.

The evidence revealed by the record in support of the application is not convincing. The Patent Office Examiner concluded, after examining the data submitted by appellants, that it failed to support their conclusions; that vitamin D has a well recognized function of controlling calcium metabolism, being the outstanding agent, in this respect, for preventing rickets; that in appellants' combination the "vitamin appears to function only in its known capacity; and the honey, seemingly, supplies only its individual values." The Examiner analysed the experimental data upon which appellants relied and showed its inconclusive character. The Board of Appeals reached the same conclusion; and decided, also, that the claims were not substantially distinguishable over Bresnick's disclosure concerning honey and fish-liver oils. The evidence in the District Court was no more conclusive. The tests upon which the appellant relied were not calculated, for example, to reveal what differcnce, if any, would result from feeding honey and vitamin D separately, instead of together. Moreover, the small number of infants used in the experiments, the varying results secured from using honey, as compared with other sugars, the biological differences in the infants, the assimilability of different sugars by different infants; these and many other factors, which should have

---

[1] 35 U.S.C.A. § 63.

been carefully studied and controlled, in order to get conclusive results, were not so controlled and studied. The best that appellants could say, in support of their contention, was that *averaging* the limited results of their experiments, there seemed to be better calcium retention when honey was used than when corn syrup was used. Moreover, they were unable to say why this result was obtained. The type of answers which were given by appellants' experts is well illustrated by the following: "I have the definite impression and I would be of the opinion that the favorable action is possibly mainly due to the fact that honey forms a vehicle or medium in which vitamin D acts well." The many other variables, which should be weighed in the scientific appraisal of the proposition which appellants assert, are suggested also by the following quotation from an article written by another of appellants' experts: "The uniform improved response with honey *is of special interest in view of the variability in results observed for some of the other factors which affected calcium balances. Although a few individual infants had higher results on corn syrup when paired periods were compared,* the majority of the infants had better results on honey, and the averages for all the paired periods were consistently in favor of honey. In analyzing the data further, it is apparent that while the favorable in-

fluence of honey occurred regardless of what other factors were operating to affect the calcium retentions, *the magnitude of improved response on honey tended to decrease as other beneficial factors were also employed.* This is to be expected, since each infant has an upper level of response which is optimal for his storage of calcium. When a type of milk was fed which permitted adequate absorption of calcium and phosphorus, when higher levels of reliable vitamin D sources were given, or when lactic acid had been added to the milk, honey produced a lesser degree of response, but even with these factors operating to produce satisfactory retentions, the use of honey could still improve results." [Italics supplied]

While the results obtained from these tentative experiments were perhaps sufficient to justify appellants' expert in saying: "We know that we can not make him [an infant] grow if we have certain milks, such as cows' milk; so we put certain sugars into the milk; *and one of these that we are advocating is honey"*; [Italics supplied] it is quite a different matter to contend that a new food product has been developed, so different, so unusual, or so unexpected in character, as to rise to the dignity of invention.[2] We see no reason to question the findings and conclusions of the District Court.

Affirmed.

---

[2] Berlin Mills Co. v. Procter & Gamble Co., 254 U.S. 156, 166, 41 S.Ct. 75, 65 L. Ed. 196; Minnesota Mining & Mfg. Co. v. Coe, 69 App.D.C. 217, 99 F.2d 986, 990, and authorities there cited.