" ELSIE SAKS ", Petitioner, *v.* " RICHARD SAKS ", Respondent.*

Domestic Relations Court of the City of New York, Family Court, Kings County, July 18, 1947.

*Herman Brothers* for petitioner.

*Edward V. Whiting* for respondent.

PANKEN, J. The problem presented in this proceeding is the determination of the paternity of the child, Karl Bernard. The testimony reveals that the parties were married on or about February 21, 1943. The child, Karl Bernard, was born to the petitioner on or about May 6, 1943, some ten or eleven weeks after the marriage ceremony.

A child born in wedlock, whether it was conceived before or after the marriage ceremony, is presumed to be the child of

* Names used herein are fictitious for the purposes of publication.

the husband and is regarded as the legitimate issue of the union. Parenthetically, it may be said that to call a child illegitimate because it was born either out of wedlock or conceived by one other than the husband of its mother is incongruous. Certainly the child is not at fault. Unfortunately, illegitimacy is regarded as a stigma upon the child. The stigmatization should be applied either to the mother or to both the mother and father, rather than to the child. Under our law legitimacy confers rights on an offspring. A child takes from his father and his mother by way of inheritance. He is entitled to support according to the means of the father or of the mother. Illegitimacy denies to a child the right to inherit from his father and he is entitled to support by his father only as directed by a court having criminal jurisdiction. To the illegitimacy which denies to a child participation in the property of his father upon the latter's demise is added victimization to the extent that he can only exact support from his father through a criminal proceeding instituted by his mother. That is the law.

The presumption of legitimacy of a child born in wedlock is as strong as any known to the law, but it may be overcome by competent and convincing proof.

Under the Lord Mansfield Rule the illegitimacy of a child could not be testified to by his parents. That rule, however, insofar as the State of New York is concerned, will end and be no longer applicable after the 1st of September of this year. (N. Y. City Dom. Rel. Ct. Act, § 131, as amd. by L. 1947, ch. 394.) It was well for the State Legislature to have acted as it did because in some instances men have had to support children other than their own and so-called illegitimate children inherited from a father charged by way of presumption with their paternity.

Some evidence has been submitted in the present case in contravention of the Lord Mansfield Rule. It was not objected to. Indeed, both petitioner and respondent testified to relationships and the time of the relationship might or might not have been responsible for the conception of the child in question. If the respondent's testimony is true, this child was born prematurely after only about six months' gestation. If the petitioner's testimony is true the gestation period was either seven or eight months. The child was conceived, according to the petitioner's testimony, in September or October.

In the absence of testimony bearing directly upon the paternity of the child, the court would not be authorized to make a finding contrary to and in contravention of the Lord Mansfield

Rule. There is, however, testimony bearing directly upon the question as to whether or not the respondent herein is the father of the child. The parties and the child submitted to blood grouping tests. It would appear that under two recognized blood grouping tests the blood of the parties, including the child, was compatible. Compatibility of blood does not *ipso facto* determine paternity. When the blood of the parties and the child is incompatible, the alleged father, by reason of such incompatibility, may be excluded.

The respondent contends that despite the compatibility of the blood under the a b and m n blood grouping tests, he is not the father of the child. Extensive testimony was given by Doctor Alexander S. Wiener. The conclusion reached by Dr. Wiener, as the result of the rh or hr test, was that the respondent herein is not the father of the child and his conclusion was definite. His testimony on that score remains unchallenged.

Since 1940 much has been said and written about rh blood. It is apparent that in the first instance the rh factor in human blood was the concern of the medical profession largely insofar as it affected pregnancies and the children in being and the children after birth.

Dr. Wiener testified: " There are two kinds of rh and two kinds of hr, and by studying these cases we were able to obtain serums from them which we can use to identify these various rh and hr's." Further on in his testimony the doctor stated, in answer to a question by the court: " If you visualize a red cell as a bag containing the hemoglobin, the outside envelope has to have a structure, and that structure is like a patchwork, like a crazy quilt, a patch here, a patch there. Now these patches we cannot chemically identify but apparently each has a separate structure so that a special serum will hook on to the patch and clump it. Now one type of patch determines the a and b; a different kind of patch determines the m and n; and the third type of patch determines the rh and hr." It is evident that the determination of the type of blood is fixed by the sera used.

By the old test, a b and m n, definite exclusion could be established only to the extent of one third. By the rh or hr test, 55% can be positively excluded from fatherhood if there is incompatibility of blood.

Dr. Wiener testified that in all he had made about 1,200 rh blood grouping tests. Two hundred of these were cases before the courts. Unfortunately, so far as I have been able to ascertain, the courts have not expressed themselves yet on the efficacy of the rh test. Nowhere is there a judicial determination anent

the rh blood grouping test. However, the medical fraternity has in no uncertain terms expressed itself, in an editorial published in the Journal of the American Medical Association (Vol. 125, June 17, 1944, p. 495), as follows: " In view of these family data, as well as the results obtained in the study of mother-child combinations and the statistical analysis of data on the distribution of the Rh blood types, the theory of six allelic genes appears to be firmly established. Therefore the medicolegal application of the Rh blood types in cases of disputed parentage is justified, provided suitable potent reagents are available. The use of the Rh tests in such cases, with the A-B-O groups and M-N types, raises the chances of excluding parentage from about 33 per cent to almost 45 per cent."

Dr. Wiener's testimony, and his conclusions, evidently arrived at since 1944, are that 55% are definitely excluded under the rh blood grouping tests.

Cross-examination of Dr. Wiener did not in any wise change his conclusions. No testimony was submitted by the petitioner in an effort to impeach the doctor's credibility or his ability and standing as a physician or negative his conclusion. The courts cannot without basis discard the testimony of a reputable and competent witness who has testified under oath.

In *Schulze* v. *Schulze* (35 N. Y. S. 2d 218, 220) the learned Judge said: " The Legislature has recognized the advances made in this type of medical science and has given its stamp of approval to the use as evidence, under certain circumstances, of the result of such examination." The court had in mind the results arrived at in consequence of blood grouping tests.

The facts in the case show that the petitioner, when she first met the respondent, was barely sixteen years of age and the respondent was about twenty. Petitioner did not reveal her pregnant condition to her family until about a month before February 21, 1943, the date of the marriage ceremony. On her own testimony it would appear that at this time she was four or five months big with child.

Under section 126-a of the Domestic Relations Law, section 34 of the Domestic Relations Court Act of the City of New York, and section 306-a of the Civil Practice Act, testimony on blood tests is admissible in evidence and such testimony is to be given the same consideration as any other type of testimony. If such testimony is believable, the court cannot reject it.

The testimony on behalf of the petitioner is questionable, despite the fact that an agreement was entered into between the petitioner and respondent under which the latter recognized

the child as the sole issue of the marriage. Men have been deceived by women — perhaps not as often as women have been deceived by men, but it is not altogether uncommon for men to be imposed upon.

In *Matter of Lentz* (247 App. Div. 31, 33) the Appellate Division, Second Department, stated: " The jurisdiction of the court to determine the relationship is, by the language used and of necessity, implied and inherent in both. It could not have been contemplated that any woman could bring a man into court and that her sworn allegation in the petition that he was her husband would foreclose him from disputing that fact * * *." Nor does the fact that a mother swears that a husband is the father of her child foreclose him from disputing it as a fact.

In this case, as in every other instance, evidence must control. Whatever the sentiments of the court may be, it cannot make compromise with what the facts dictate. The proceeding must be determined upon the testimony adduced and the facts established.

On the testimony and on the facts established I must find that respondent is not the father of the child, Karl Bernard.

The petitioning wife is entitled to support by the respondent. The respondent knew when he married her that she was pregnant. He did not know she was not carrying his child. Having found as matter of fact that the child born to the petitioner was not conceived by the respondent, I cannot find as matter of law that she is entitled to support on the basis of his means. Support is allowed her on the basis of her likelihood to become a public charge. Often an allowance to a dependent of a sum on the basis of likelihood to become a public charge is no lower than if allowance were made on the basis of means. However, unless there is a finding as to the basis upon which the order is made, the person chargeable with the support of the dependent may be in a position to pay a greater sum, and may be required to provide according to his means. Hence, the finding in this case is made that the petitioner is only entitled to support on the basis of her likelihood to become a public charge.

The order of the court is that the respondent be required to contribute the sum of $12 a week for the support of the petitioner.

**So ordered.**