Nathae Sweedler, Bef.
On October 24, 1951, Harry Chapin Smith, the decedent herein, died intestate, a resident of Kings County. On December 29, 1954, the Public Administrator of the County of Kings, as administrator of the estate of Harry Chapin Smith, the decedent, filed a petition and account of his proceedings. The Public Administrator alleged that the decedent’s distributees were unknown, and listed the names of 329 persons who claimed to be distributees of the decedent. Objections to the account were filed. Likewise, individuals from different parts of the country and abroad claimed status as distributees in various degrees of kinship.
On January 16, 1956, the Honorable Maximilliae Moss, Surrogate of Kings County, appointed me ‘ ‘ as Special Beferee, to hear, determine and report on all questions arising upon the settlement of said account ” and “ the determination of the identities of the distributees of this estate, if any.” The order also provided: ‘ ‘ That the said Beferee shall determine the place or places and the time or times and the method of procedure for the taking of any testimony herein and to take all testimony and to make rulings as to its competency, *802 relevancy and admissibility and to submit his findings of facts, conclusions of law, and recommendations to this Court upon the completion of all such testimony.”
As Referee, I took the statutory oath and duly qualified. Thereafter, as authorized by the order herein, I conducted hearings and considered various motions made from time to time, and now respectfully submit my determinations and recommendations in compliance with the order of my appointment.
The issue before me is the determination of the persons legally entitled to share in the estate of the decedent. The distribution of the decedent’s property must be determined pursuant to section 83 of the Decedent Estate Law, the relevant statute of descent and distribution of the State of New York, which governs intestate distribution.
The testimony disclosed that the decedent, Harry Chapin Smith, was born in Springfield, Massachusetts, the son of Norman and Julia Chapin Smith. Although not wealthy, he completed his education at Harvard College in 1901; after-wards, he became a newspaperman. The evidence indicates that in the latter years of his life, Smith was an eccentric, leading a pauper’s life, roaming the streets in search of junk to sell. He lived as a recluse, in a sparsely furnished hall bedroom in a dilapidated building on Cumberland Street in Brooklyn. He died in Kings County Hospital at the age of 84, and was sent to Potter’s Feld.
The testimony of Joseph R. Thompson, a New York banker, revealed a dramatic antithesis. For, in contrast to the shabby rags which Smith bore on his back, he carried a brilliant mind, and through his extraordinary knowledge of finance, he amassed great wealth.
In proceedings of this kind involving the death of a recluse leaving a large fortune and no known close relatives, there invariably arises the filing of countless claims of person contending that they are relatives of the decedent; of those whose sole claim is based on similarity of name; of those who are honestly mistaken as to the identity of the decedent; and of those believing they can dip into and partake of a large inheritance. In the shadow of fortune, there is thus waged the battle of the heirs and the would-be heirs.
. All claimants were given an opportunity to prove their real or putative relationship to Harry Chapin Smith. The evidence offered ranged from mere guesses to valid facts.
The objectives were to eliminate those not entitled to share in the distribution of the estate, and to ascertain the next of *803 kin entitled to participate in accordance with the provisions of section 83 of the Decedent Estate Law.
Extensive evidence, both oral and documentary, was submitted to me, from the commencement of the hearings on January 30, 1956, until May 9, 1957, when the hearings were closed. In addition to many motions made in the course of the trial, there were other motions brought on for special consideration and hearing.
The record consisting of over 4,000 pages is enlivened with dramatic, sensational and sometimes fantastic stories. My duties and functions are to consider all of the evidence offered by the witnesses, to weigh the credibility thereof, and to make the necessary and proper findings of fact emanating therefrom and from an inspection of the numerous documents and exhibits offered in evidence.
Among the many witnesses who appeared before me were Joseph R. Thompson (referred to above), and George Sumner Small, general manager of the Pioneer Warehouses, both representative and outstanding citizens whose disinterested, unbiased testimony has illuminated the path along which the verities of this tangled maze really lie.
The first and most important claimant to consider is Jean Mackdon, who alleges herself to be the lawful widow of Harry Chapin Smith by reason of her alleged common-law marriage to him. The precept laid down in Boyd v. Boyd (252 N. Y. 422, 428) is controlling: “ The validity of any alleged common-law marriage is always open to suspicion. Especially is doubt justified when one of the parties is dead. Clear, consistent and convincing evidence is required to establish the fact.” (Emphasis mine.)
The testimony adduced by the claimant, Jean Mackdon, has failed to sustain the burden of producing such probative evidence. Her proof in furtherance of establishing a common-law marriage is inadmissible under section 347 of the Civil Practice Act. Her claim that the door to such testimony had been opened by the previous statement of Joseph R. Thompson to the effect that he knew the decedent had never been married, is not warranted. The latter was not interested in the event, nor did he testify as an agent or servant of any person having an interest in the case. He was brought in as a totally disinterested witness, and therefore, there is no supportable inference to be drawn that his appearance and testimony altered the otherwise rigid implications of section 347 of the Civil Practice Act.
*804 Even if the evidence of the claimant, Jean Mackdon, were admissible, it would be entirely incredible as a matter of law, and would not conform to ordinary concepts of behavior. It is also to be noted that no testimony was adduced by any witness wherein the decedent acknowledged to any acquaintances of his that Jean Mackdon was his wife.
The following basic rule governing proof of a common-law marriage is set forth in Matter of Burdak (173 Misc. 839, 842, affd. 262 App. Div. 1000, affd. 290 N. Y. 555): “ It is an essential element of a common-law marriage that there must be an agreement between the parties to take each other as husband and wife in a permanent union. (Matter of Pratt, 233 App. Div. 200; Matter of Haffner, 254 N. Y. 238; Sprague v. Sprague, 255 App. Div. 699; Graham v. Graham, 211 id. 580; Smith v. Smith, 194 id. 543; Matter of Auerbach, 208 id. 163; Dom. Rel. Law, § 10.) The agreement must be a mutual agreement per verba de praesenti. If there is no such agreement, there can be no valid marriage. If consent is lacking, nothing can take the place of it. ‘ This consent is of itself sufficient, but for it there is no substitute or equivalent.’ (Per Kelly, P. J., in Graham v. Graham, 211 App. Div. 580, 583.) ”
Jean Mackdon nowhere testified to any agreement per verba de praesenti, nor is she aided measurably by her two corroborating witnesses. Helen Booth Down contradicts Jean Mackdon with respect to the possible place of meeting between herself, the claimant Jean Mackdon and the decedent, Harry Chapin Smith, and, in addition, testifies to having met Harry Chapin Smith and Jean Mackdon in the latter part of 1935, and not prior thereto. Her statements do not even furnish colorable corroboration. As for the witness, Cassie Henderson, she involved herself in such a welter of confusion as to vitiate any possibility of corroboration of the testimony of Jean Mackdon. I find her testimony wholly incredible, and of no probative value.
I decide that Jean Mackdon never was the common-law wife of the decedent, Harry Chapin Smith, and that her claim has no foundation either in fact or in law. Jean Mackdon’s claim is dismissed and her objections to the accounting are overruled.
Elmore Smith asserted a claim as the illegitimate son of the decedent, Harry Chapin Smith. Ample opportunity was afforded Elmore Smith to establish his alleged relationship. Many adjournments were given for that purpose, and to accommodate this claimant, I adjourned the hearing to the Veterans’ Administration Hospital in New York City, where extensive *805 testimony was taken. After careful consideration of all the evidence adduced in behalf of Elmore Smith, I find that he was not the son of the decedent, Harry Chapin Smith. Even if he were the illegitimate son of the decedent, Harry Chapin Smith, his claim would have to be disallowed as a matter of law. (Matter of Tomacelli-Filomarino, 189 Misc. 410; Matter of Vincent, 189 Misc. 489.) The claim of Elmore Smith is dismissed, and likewise, his objections to the accounting are overruled.
The claim of the alleged nephew, Walter Tate, finds no support in credible and admissible evidence, or in his exhibits received in evidence. He failed by credible testimony to support any relationship to Harry Chapin Smith. His attempt to do so was through hearsay testimony not within the pedigree exception to the hearsay rule laid down in Aalholm v. People (211 N. Y. 406). Furthermore, the claimant twice asserted that he had withdrawn his claim. I find no basis for such claim, dismiss same, and overrule the objections of Walter Tate to the accounting.
I find that there is no support in credible or probative evidence for the claim of fifth degree of relationship of the Walts-Harp claimants, and the claimant LeRoy Smith.
The testimony of Jennie Walts was completely at variance with her sworn bill of particulars on the matter of the identity of her grandmother. All other declarations tending to establish her relationship were in violation of the principle set forth in the leading case on pedigree of Aalholm v. People (supra).
I find that the claimants Simeon J. Harp, Earl L. Harp, Fred H. Harp, Jennie Alvina Harp Walts, and LeRoy A. Smith, are not related to the decedent, Harry Chapin Smith. Their claims are dismissed, and their objections to the accounting are overruled.
I find no credible evidence supporting the claims of relationship to the decedent of R. M. Smith, William Oscar Smith, Mamie Smith Suitt and C. Norman Smith, herein designated as the R. M. Smith claimants. Their claims are dismissed, and their objections to the accounting are overruled.
With respect to the claimants Rutherford H. Ferry, William Gr. Ferry, and William H. Smith, 2nd, at the outset, in passing on the motions to exclude the pedigree testimony offered in their behalf on the ground that same is inadmissible as hearsay evidence, I find as a matter of law, and so state pursuant to section 344-a of the Civil Practice Act, that I take judicial notice of all of the documentary evidence relating to birth, marriage, divorce, death, census and probate records offered *806 in evidence with their respective identifications as indicated on the exhibits and in the record. I find these records to have been properly authenticated and entitled to the same consideration accorded to them by the courts of the States from which they emanate.
On the basis of the foregoing, I find that the common ancestors, progenitors of the claimants Rutherford H. Ferry, William G. Ferry, and William H. Smith, 2nd, and the decedent, Harry Chapin Smith, are Levi Smith, Jr. and his wife, Fannie Hayes Smith, that the issue of that union were five children: George N. Smith, Elizabeth Smith, Fannie Smith, William Smith and Norman Smith. Of these five children, Norman Smith was the father of Harry Chapin Smith, the decedent herein. Norman Smith was born on August 26, 1833, and married Julia Chapin on December 21, 1864. The decedent, Harry Chapin Smith, was born of this union on June 1, 1867.
The oldest son of the union of Levi Smith, Jr. and Fannie Hayes Smith was George N. Smith, who was born on December 21, 1824 and who married Julia Ayres on September 26, 1849. The children of that union were George Rowland Smith, William Rutherford Smith, Helen Webster Smith and Annie Hayes Smith. Of these four children, the first three died without issue. Annie Hayes Smith married Clifford W. Ferry on April 2, 1879. This marriage resulted in the following issue: Douglas Ferry, who died without issue, William G. Ferry, one of the present claimants, whose claim is hereby allowed, and Rutherford Hayes Ferry, also a claimant in this proceeding, whose claim is hereby allowed.
Another son of the union between Levi Smith, Jr. and Fannie Hayes Smith (the common ancestors), was William Smith, who married Helen Barton. That union resulted in the following issue: James Rutherford Smith, who died without issue, Louis C. Smith, who died without issue, Allyn Smith, who died without issue, and William Hayes Smith, who married Gertrude Haunton. The latter marriage resulted in the birth of the claimant, William H. Smith, 2nd, who was born on November 10, 1908, and whose claim I find to be valid.
By reason of the foregoing, I find that the claimants Rutherford Hayes Ferry, William G. Ferry, and William H. Smith, 2nd, are the proper claimants to the estate of the decedent, Harry Chapin Smith, within the fifth degree of consanguinity. I therefore grant their claims each respectively to one third of the distributive share of the net estate of the decedent, Harry Chapin Smith.
*807 Among others claiming kinship to the decedent, and who filed objections to the account, were: Mary E. French, Harry Klein Chapin, Fred Martin Chapin, Mrs. Arthur J. Pedley, Katherine Chapin Twing, Katherine Howe Twing, Stanley D. Main, J. F. Booth, Ethel P. Conklyn, Kenneth P. Smith, Donald P. Smith, Zora Smith Benford, Pauline Smith Johnson, Mary Sneed Bidwell, Lew Boyer, Nellie B. Marshall, Lawrence Bradford Cheney, Mrs. B. H. Alfrey, Catherine S. Ward, Christine I. Ferry Bumney (who withdrew her claim) and Mrs. Joseph Ward.
After examining their claims, as supported by their respective bills of particulars, I find no basis for said claims, and hereby dismiss each and every one of them, and overrule their objections to the accounting.
Likewise, the following individuals filed claims with Daniel G. Connolly, Esq., counsel to the Public Administrator of Kings County, claiming status as distributees of Harry Chapin Smith: Mrs. Constance Blasimgame, Mrs. Ida Burt, Mrs. Ella Nora Black, Mrs. Betty Bidwell, Frank A. Burnett, Mrs. Anne M. Bennett, Grace Muriel Grant Baker, Mary E. Campbell, Mrs. Giles W. Chapin, Francis D. Chapin, Lillian Agnes Chapin, Florence E. Chapin, Philip Edmond Chapin, Josephine Miriam Chapin, Estate of Warren Storrs Chapin, Mrs. Catherine Smith Conover, Bobert C. Crowell, Mrs. Hazel V. Surato Clayton, Mrs. John Dennis, Elizabeth Declercq, Mrs. Flora Di Angelis, John Joseph Donahue, Elizabeth Smith Freds, Mrs. Andrew Klaus, Mrs. Emma Goodhue, Helen Elizabeth Chapin Carmier, Bessie Hardinger, Grace D. James, Effie M. Holloday, Amanda Kennemur, William F. Kraft, Mrs. O. D. Little, Mildred Chapin Mudgett, Mr. Merrill, Mrs. Thomas F. McAllister, Matta Lou Nichols, James J. O’Connor, Bertha Chapin Pedley, Mrs. Anna Pierce, Donald Chapin Boot, Mrs. Marie-Louise Smith, Mildred Smith, G. M. Sayller, Daisy Shumaker, Victor H. Sisson,' Edwin H. Smith, B. 0. Smith, Milton H. Smith, Sr., Helen C. Smith, Walter H. Smith, Lillian H. Main Snyder, George C. Sullivan, Mrs. Nellie Throsel, Mrs. Theresa Thompson, Idell May Main Tusler, Bertha Trotter, Mrs. Lucy Smith Waterbury, Miss Eva A. Westermeyer, Edith Williams, Evan Van Wormer, John H. Smith, Earl C. Smith, John C. Smith, John G. Smith and Mrs. Bessie Wood.
Counsel for the Public Administrator caused these statements of claim to be delivered to me on September 20, 1957. I have examined them, but find them inadequate to support any claim of relationship to the decedent, and therefore dismiss same.
*808 Pursuant to rule 34 of the Rules of the Surrogate’s Court of Kings County, I am submitting with this report all the testimony taken before me and all the papers and exhibits either marked for identification or admitted in evidence.
There now remain for determination other objections to the account. Hearing is set on these issues for Monday, October 28, 1957, at 10:00 a.m., in the Surrogate’s Court, Room 25-A, Hall of Records, Brooldyn, N. Y.
The attorneys, Lord, Day & Lord (by John W. Castles, III, of counsel), representing the prevailing parties, Rutherford Hayes Ferry, William G. Ferry, and William H. Smith, 2nd, are hereby directed to settle order on five days’ notice to all attorneys (above named), and submit the order to me as Referee for signature on October 18, 1957, at the Surrogate’s Court, Hall of Records, Room 25-A. Service by mail shall be sufficient.