**Josefina Santiago RIVERA, Plaintiff,**

v.

**Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare, Defendant.**

**Civ. No. 168–65.**

United States District Court
D. Puerto Rico.

Jan. 5, 1966.

---

William Feliciano Ruiz, Ponce, P. R., for plaintiff.

Candita Orlandi, Asst. U. S. Atty., San Juan, P. R., for defendant.

CANCIO, District Judge.

This is an appeal from a finding by the Secretary of Health, Education and Welfare denying the plaintiff's application for insurance benefits after the death of his father. The sole question before us is whether the plaintiff falls within Section 402(d)(3) of Title 42 U.S.C.A., which reads as follows:

"A child shall be deemed dependent upon his father or adopting father at the time specified in paragraph (1)(C) of this subsection unless, at such time, such individual was not living with or contributing to the support of such child and—(A) such child is neither the legitimate nor adopted child of such individual, or (B) such child has been adopted by some other individual. For purposes of this paragraph, a child deemed to be a child of a fully

or currently insured individual pursuant to section 416(h)(2)(B) of this title shall, if such individual is the child's father, be deemed to be the legitimate child of such individual."

Section 416(h)(2)(A) of the Act provides that

"In determining whether an applicant is the child or parent of a fully or currently insured individual for purposes of this subchapter, the Secretary shall apply such law as would be applied in determining the devolution of intestate personal property by the courts of the State in which such insured individual is domiciled at the time such applicant files application, or, if such insured individual is dead, by the courts of the State in which he was domiciled at the time of his death, or, if such insured individual is or was not so domiciled in any State, by the courts of the District of Columbia. Applicants who according to such law would have the same status relative to taking intestate personal property as a child or parent shall be deemed such."

The facts in this case are as follows: On November 27, 1961 Josefina Santiago Rivera, of Ponce, Puerto Rico, applied for Survival Insurance Benefits under the Social Security Act as amended, on behalf of Samuel Treviño Santiago for child's benefits. Application was denied on 26 November 1962 pursuant to determination by the Secretary that to qualify for child's benefits Samuel Treviño Santiago must: (1) have the legal relationship of a child of an insured individual for inheritance purposes under the laws of New York, or (2) the parents must have gone through a marriage ceremony. Since neither requirements had been met, Samuel Treviño Santiago did not qualify for benefits. The Social Security Administration affirmed its determination after reconsideration on 20 December 1962. The case was again brought before the hearing examiner on 4 January 1963 and heard on 17 December 1964

with the same results. A request for review by the appeals counsel was denied on 20 March 1965 and the case is now before this Court under Section 205 (g) of the Social Security Act as amended, 42 U.S.C. § 405(g), for judicial review of the final decision of the Secretary of Health, Education and Welfare.

The insured individual Juan Treviño, on whose social security earnings record the benefits were claimed, died in Brooklyn, New York, on 22 June 1961. Josefina Santiago Rivera, of Ponce, Puerto Rico, who was at that time the mother of two children born out of wedlock, moved to New York City from Puerto Rico in 1954. (Tr. 28–32.) While she was living in New York, plaintiff became pregnant by Juan Treviño, who, at that time was living in Brooklyn, New York. When her pregnancy was six months advanced, plaintiff returned to Puerto Rico because her brother was ill. She never saw Treviño again since he continued to live in Brooklyn, New York, until his death in June 1961, while plaintiff has remained with the child in Puerto Rico. (Tr. 34–36.) The plaintiff gave birth to the child claimant Samuel Treviño Santiago in Ponce, Puerto Rico, on 17 July 1955. (Tr. 29.) Samuel's birth certificate indicates that Juan Treviño, recognized his paternity over Samuel on 10 April 1957.

The plaintiff testified, and it is undisputed, that while Treviño sent some money to plaintiff for the child at the time of his birth, he did not contribute anything to the support of the child claimant after that time. (Tr. 20.) Neither is there any issue regarding the fact that Treviño was married in Brooklyn, New York, in March 1954 nor that plaintiff knew of five children living in New York who were fathered by him; and that she had this knowledge at the time she cohabited with him. (Tr. 36–37, 19–20.)

Decedent's widow, Mónica Treviño Rivera, has stated that Juan Treviño lived in New York as early as 1946. Nevertheless, it is clear that decedent lived in New York continuously from the time of his marriage in 1954 to the time of his death in 1961. Shortly before child claimant was born, decedent wrote to plaintiff his last letter to her in which he indicated that he did not intend to return to Puerto Rico. (Tr. 61.)

Plaintiff alleges that both Juan Treviño and Josefina Santiago Rivera, the parents, are Puerto Ricans and that the child was recognized as the son of Juan Treviño by decision of the Superior Court of Ponce, Puerto Rico, on 20 March 1957, Civil Case 56–2294; that Samuel Treviño Santiago is protected by the Constitution and the laws of Puerto Rico; that Article II Section 1 of the Constitution of the Commonwealth of Puerto Rico states that there shall be no discrimination due to race, color, sex, origin or social condition nor political or religious beliefs; that the Supreme Court of Puerto Rico, in the case of Ocasio v. Díaz, 27 June 1963, interpreted this Section as meaning that (1) all children are legally equal since the approval of the Constitution of the Commonwealth of Puerto Rico and (2) that there are no illegitimate children in Puerto Rico; that Samuel Treviño Santiago, who was born and recognized by Juan Treviño after the approval of the Constitution of the Commonwealth of Puerto Rico, has the same legal rights as his brothers who were born in New York.

■■ The status of legitimacy pertaining to plaintiff claimant Samuel Treviño Santiago is determinable by the courts of his domicile, Puerto Rico. The protection of the rights acquired under the laws of his domicile pertain to the courts of that domicile. It is a well settled principle that the interpretation of local laws is to be determined by the courts of that jurisdiction unless there is manifest error. Ker & Co. v. Couden, 223 U.S. 268, 32 S.Ct. 284, 56 L.Ed. 432; Córdova v. Folgueras y Rijos, 227 U.S. 375, 33 S.Ct. 350, 57 L.Ed. 556; Santa Fe Central Ry. v. Friday, 232 U. S. 694, 34 S.Ct. 468, 58 L.Ed. 802; Nadal v. May, 233 U.S. 447, 34 S.Ct. 611, 58 L.Ed. 1040, (1914); De Villanueva v. Villanueva, 239 U.S. 293, 36 S.Ct. 109,

60 L.Ed. 293, (1915); Díaz v. González, 261 U.S. 102, 43 S.Ct. 286, 67 L.Ed. 550, (1923); Matos v. Alonso Hnos., 300 U.S. 429, 57 S.Ct. 529, 81 L.Ed. 728, (1937); Bonet v. Yabucoa Sugar Co., 306 U.S. 505, 59 S.Ct. 626, 83 L.Ed. 946, (1939); De Castro v. Board of Commissioners, 322 U.S. 451, 64 S.Ct. 1121, 88 L.Ed. 1384, (1944); In re Sawyer, 360 U.S. 622, 79 S.Ct. 1376, 3 L.Ed.2d 1473, (1959). Nevertheless, what is at issue here is not so much the domicile of petitioner; but, rather, the domicile of petitioner's intestate.

The Federal Statute involved, Section 202(d) of the Social Security Act (42 U.S.C.A. § 402(d)), makes a child's rights to receive benefits upon decision of his father dependent upon the devolution of intestate personal property in the court of the State in which decedent was domiciled. Hence, the question at bar hinges upon the determination of the domicile of Treviño and we need not enter into a consideration of the constitutional question propounded.

Petitioner contends that this Court should conclude that "as a general rule we may say that Puerto Ricans living in the States have the firm intention that some day they will return to Puerto Rico", that "they are only in the States temporarily getting a better way of living but their true domicile is right here in (sic) the Island. In other words, that they have residence in the States (New York in this case) and their domicile is in Puerto Rico."

■■■■ This the Court can not do. Counsel is asking too much. Instead of jumping to these extravagant conclusions and generalizations, it is the duty of both advocate and judge to search out the law applicable to the case, and follow it. The place where a man lives is properly taken to be his "domicile" until facts adduced establish the contrary. District of Columbia v. Murphy, 314 U.

S. 441, 62 S.Ct. 303, 86 L.Ed. 329. Questions of domicile are to be determined by the party's intention, his acts and declarations, the nature of his stay and the law applicable. Kristensen v. McGrath, (1948) 86 U.S.App.D.C. 48, 179 F.2d 796, affirmed 340 U.S. 162, 71 S. Ct. 224, 95 L.Ed. 173; Shilkret v. Helvering, (1944) 78 U.S.App.D.C. 78, 138 F.2d 925.

■■■■ Residence in fact, coupled with purpose to make place of residence one's home, are essential elements of domicile. Statements as to that intention are sufficient to establish the intention—animus manendi. Godínez v. Jones, (D.C.P.R., 1960), 179 F.Supp. 135. A person can have only one domicile at a time, and a domicile once obtained persists until a new one is acquired. Ellis v. Southeast, Const. Co., 8 Cir., 260 F.2d 280, (1958); Barber v. Varleta, 9th Cir., 199 F.2d 419, (1952). However, any person who is sui iuris may make a bona fide change of domicile at any time. Stine v. Moore, 5th Cir., 213 F. 2d 446, (1954). To do so, both residence in a new locality and intention to remain there are indispensable. State of Texas v. State of Florida, 306 U.S. 398, 59 S. Ct. 563, 83 L.Ed. 817, (1939). If a person has actually moved to another place with an intention of remaining there for an indefinite time and as a place of fixed present domicile, it is deemed his place of domicile even if he entertains a vague intention to return to his original place at some future period. Goodloe v. Hawk, (1940), 72 App.D.C. 287, 113 F. 2d 753. Gates v. C.I.R., 10th Cir., 199 F.2d 291, (1952); Hardin v. McAvoy, 5th Cir., 216 F.2d 399, (1954).

Language used by decedent in his correspondence with petitioner at the time of her pregnancy and shortly prior to the child's birth manifests decedent's intention to remain (as he did) permanently in New York.*

* In a letter of February 25, 1955 decedent wrote to plaintiff that "I may go to Puerto Rico within one month or within two years because you know I am not living too badly over here." (Tr. 49.)

This language is not indicative of an animus revertendi on the part of Juan Treviño; more so in view of his statements in a letter about the time of the

The Secretary's finding that decedent's domicile was in the State of New York at the time of his death is amply supported by the evidence presented to him.

The defendant states that according to the Social Security Act, the applicable law is that of New York. The plaintiff contends that in equity the more lenient law of Puerto Rico should be applied.

The question of which law is to be applied is to be determined in accordance with the express and specific requirements of the Social Security Act. Congress have expressed their will clearly. No room has been left for judicial interpretation of the law.

The Act unambiguously requires in section 216(h)(2)(A) that in determining whether the applicant is the child of an insured individual, the Secretary shall apply such law as would be applied in determining the devolution of intestate personal property by the courts of the State in which insured individual was domiciled at the time of his death. 42 U.S.C. § 416(h) (2) (A). As seen above, at the time of decedent's death, his domicile was in the State of New York. Therefore it is to the law of that State and no other that we must turn. Warrenberger v. Folsom, 3 Cir., 239 F.2d 846; Walls v. Celebrezze, D.C., 215 F. Supp. 414; Chatman v. Ribicoff, D.C., 196 F.Supp. 931; Wieczoreck v. Folsom, D.C., 142 F.Supp. 507; González v. Hobby, D.C., 110 F.Supp. 893.

In considering the law of the State of New York, it is fundamental that a section of the statute should not be read in isolation from the context of the whole law of that State. Richards v. United States, 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492, (1962). Hence, this court, the court of forum, in determining this question, must take into account the whole law of New York, including not only the local law, but also its rules as to conflict of laws. Re Schneider's Estate, 198 Misc. 1017, 96 N.Y.S.2d 652, 100 N.Y.S.2d 371; University of Chicago v. Dater, 277 Mich. 658, 270 N.W. 175.

Under the laws of the State of New York, the law applicable in the intestate devolution of personal property is the law of the domicile of the decedent at the time of his death: the law of the State of New York. McKinney: Consolidated Laws of New York Annotated, c. 13. Decedent Estate Law, Sect. 47. The laws of New York governing the devolution of personal property provide at present that an illegitimate child may not inherit from his father. Id. Sect. 83; Cf. In re Tomacelli-Filomarino's Estate, 1947, 189 Misc. 410, 73 N.Y.S.2d 297; In re Vincent's Estate, 1947, 189 Misc. 489, 71 N.Y.S.2d 165; In re Slater's Estate, 1949, 195 Misc. 713, 90 N.Y.S. 2d 546. Children born out of wedlock are illegitimate, and may be legitimated only by the subsequent valid marriage of the parents to each other. C.L.N.Y.A. Domestic Relations Law, Sect. 24. Under the laws of the State of New York, as of the time of decedent's passing, illegitimacy denies to a child the right to inherit from his father. In re Smith's Estate, 1957, 9 Misc.2d 800, 166 N.Y.S. 2d 648; Saks v. Saks, 1947, 189 Misc. 667, 71 N.Y.S.2d 797.

It is unfortunate that under the law applicable plaintiff does not qualify for child's benefits under the Social Security Act. This is not the decision that this Court would like to reach. This is especially so since the State of New York has found it desirable to change its statutes in this matter. Nevertheless, the law must be applied as it existed at the time of decedent's passing.

Since the Secretary's findings are amply sustained by the evidence, and the law applicable is as we have stated it, the Secretary's denial of plaintiff's application for insurance benefits after the death of his father must be, and it is hereby affirmed.

birth of the child where he says "[t]ry to find your future over there [Puerto Rico]. I'll try to find my way over here." (Tr. 61.)