William Rigler, J.
In the case at bar, respondent father seeks to enforce his rights of visitation as ordered by this court in connection with an order of support. The parties have been separated since February of 1972. At the time of separation they had been married for approximately one year and the child, born June 11,1971, was apparently conceived about four months prior to the marriage of the parties. Petitioner on many .occasions has refused to permit respondent his visitation *536 privileges as ordered by this court. Respondent no longer seeks to enforce visitation. Now, before this court, petitioner denies respondent is the father of her child and has named the man who is the father.
The legal, economic and social consequences of her admission, both to herself- and to her child, have been explained to petitioner by her learned counsel and by this court. The petitioner nevertheless persists in her admission with the knowledge that, based on prior "court proceedings, she has voluntarily incriminated herself in the crime of perjury. How, then must this court proceed in the interests of justice and in the best interests of the child?
It is well settled, almost to the point of cliche, that the presumption of legitimacy of a child born in wedlock 1 ‘ is, one of the strongest and most persuasive known to the law ”. (Matter of Findlay, 253 N. Y. 1, 7.) This presumption is, according to most of the cases, equally as potent where the child is conceived before the marriage. ‘ ‘ A child born in wedlock, whether it was conceived before or after the marriage ceremony, is presumed to be the child of the husband and is regarded as the legitimate issue of the union * * * The presumption of- legitimacy of a child born in wedlock is as strong as any known to the law, but it may be overcome by competent and convincing proof.” (Saks v. Saks, 189 Misc. 667, 668.)
(See, also, Matter of Lentz, 247 App. Div. 31; Harding v. Harding, 22 N. Y. S. 2d 810, 816, affd. 261 App. Div. 924 [“ From the fact that the child was born after the marriage of the parties arises the presumption that the child is the legitimate child of the husband ’ ’], and Eisenlord v. Clum, 49 Hun 340, 343.)
This presumption of legitimacy of a child born in wedlock, although conceived prior to the marriage ceremony has been criticized by Sidney Schatkin (Disputed Paternity Proceedings, [4th ed.], p. 184). In referring to Harding v. Harding (supra), this eminent authority observed, “ It seems to the author, moreover, that the admission of antenuptial sex relations raises a doubt of paternity where otherwise none would exist. ’ ’
In Matter of Swift v. Swift (65 Misc 2d 1014, 1018) the court distinguished Matter of Findlay (supra) the leading case in this jurisdiction as follows: “ It has long been the rule that a child bom to parties who, at the time of apparent conception, were married is presumed to be the legitimate' child of each” (emphasis added).
This court, however, wishes to give paramount attention to the words of Chief Judge Cardozo in Matter of Findlay (253 N. Y. 1, 7, 8, 10, supra) “ the presumption is, one of the strongest *537 and most persuasive known to the law * * * and yet subject to the sway of reason * * * It was exploded * * * ‘ on account of its absolute nonsense ’ * * * the presumption will not fail unless common sense and reason are outraged by a holding that it abides ” (emphasis added).
This court believes that common sense and reason require a recognition that the mores of society have altered since the presumption was first promulgated and even since Findlay. We can no longer take the view that it is only the rare, immoral woman who does not remain chaste until marriage. Further, we cannot maintain the fiction that where the poor misguided soul does yield, after much protest, to the ways of the flesh, she waits faithfully and fervently for her one true love to make an honest woman of her.
It is perfectly reasonable and sensible to believe that where a woman has engaged in antenuptial relations with one man, that she is capable of doing so with others. Where this probability is coupled with the petitioner’s in-court admissions in the face of consequences of a perjury prosecution, loss of support for her child, providing her husband with grounds for annulment, not to mention the embarrassment and ignominy involved, this court believes that the presumption of legitimacy is sufficiently overcome.
Moreover, this court does not see where it would be in the best interests of the child to saddle him with a grudging father who, formerly concerned and loving, is now understandably hurt, confused and hostile in view of the petitioner’s recent admissions. To maintain the present support order would be neither just to the respondent nor to the child. Nor can we think in terms of protecting the child from the disgrace of bastardization in view of the mother’s determination to publicly maintain the respondent is not the father. This is a sad, sad scenario for which a deceptive and vindictive young woman, the petitioner, must ■bear the responsibility.
This court concludes that there is a distinction in the presumption of legitimacy of a child born in wedlock, where such child has been conceived prior to the marriage ceremony. Although a strong presumption in favor of legitimacy still exists in spite of this qualification, it has been convincingly overcome by the facts of this ease. The order of support and visitation is hereby terminated. Arrears canceled.